IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | **NO. 1:CR-03-251-05** |
| **v.** | : | |
| | : | |
| | : | |
| **MICHAEL MCKINNON** | : | |

**M E M O R A N D U M**

Before the court are Defendant Michael McKinnon's post-trial motions filed under Federal Rules of Criminal Procedure 29 and 33. In his motions, Defendant raises fifteen issues that he believes form the basis for a judgment of acquittal or a new trial. For the reasons set forth below, the court will grant Defendant's post-trial motions in part and deny them in part. The court finds that Defendant's conviction on Count 2, conspiracy to distribute or possess with intent to distribute controlled substances, is supported by insufficient evidence. Thus, the court will grant Defendant's motion for judgment of acquittal on this issue. The court finds Defendant's other arguments to be ill-founded and will deny his post-trial motions in all other respects.

I.        **Background**

The underlying facts of this case are well-known to the parties and will not be reiterated at length. Defendant was originally indicted on September 17, 2003 for offenses related to his involvement in drug trafficking and in a company called Cars on Credit, Inc. Six superseding indictments were eventually filed, and in the Sixth Superseding Indictment, Defendant was charged with the following: (1) Count

1: distribution and possession with intent to distribute controlled substances; (2) Count 2: criminal conspiracy to distribute and possess with intent to distribute controlled substances; (3) Count 3: criminal conspiracy to commit money laundering; (4) Count 4: possessing and brandishing a firearm in furtherance of drug trafficking; (5) Count 5: assault on federal officers; and (6) Count 6: forfeiture.

A six-day trial commenced on September 21, 2004, and the jury returned a verdict on September 28, 2004.  The jury found Defendant guilty on all counts except for the assault on a federal officer charge in Count 5.  With respect to Count 1, the jury found Defendant guilty of distribution or possession with intent to distribute 1.5 or more kilograms of crack cocaine, 500 grams or more of cocaine powder, and 100 kilograms or more of marijuana.[1]  With respect to Count 2, the jury found Defendant guilty of engaging in a criminal conspiracy to distribute or possess with intent to distribute 1.5 kilograms or more of crack cocaine, 500 grams or more of cocaine powder, and 100 kilograms or more of marijuana.  The jury found the amount of drug proceeds involved with the criminal conspiracy to commit money laundering in Count 3 was more than $200,000.  With respect to Count 4, the jury found that Defendant brandished a firearm.  The jury also made the following special findings: that Defendant possessed a deadly weapon; that Defendant obstructed or impeded or attempted to obstruct or impede the administration of justice during the course of the investigation or prosecution of the offense; and that Defendant recklessly created a substantial risk of death or serious bodily injury to another

---

[1]This case was tried after the Supreme Court's decision in *Blakely v. Washington*, 124 S. Ct. 2531 (2004), but before the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005). During the period of time between these two cases, the Government submitted sentencing enhancement factors to the jury for proof beyond a reasonable doubt.

person in the course of fleeing from law enforcement officers.  Finally, the jury found that $17,500 belonging to Defendant was subject to criminal forfeiture.

Defendant timely filed his post-trial motions.  The parties have briefed the issues, and the matter is ripe for disposition.

**II.**          **Legal Standard**

Defendant's post-trial motions are based on Rule 29, Motion for a Judgment of Acquittal, and Rule 33, Motion for a New Trial.  In deciding a post-verdict motion for judgment of acquittal under Rule 29, a court must determine whether the evidence presented at trial was sufficient to support the conviction. *United States v. Johnson*, 302 F.3d 139, 149 (3d Cir. 2002).  In making this determination, a court must view the evidence introduced at trial in a light most favorable to the Government and uphold the verdict so long as any rational trier of fact "could have found the challenged elements beyond a reasonable doubt." *United States v. Peppers*, 302 F.3d 120, 125 (3d Cir. 2002).  The court may not reweigh evidence or independently examine witnesses' credibility. *Id*.  Instead, the court must draw all reasonable inferences in favor of the jury's verdict. *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002).  In short, a defendant bears a "very heavy burden," *United States v. Coyle*, 63 F.3d 1239, 1243 (3d Cir. 1995), and a finding of insufficiency "should be confined to cases where the prosecution's failure is clear." *Smith*, 294 F.3d at 477 (internal quotation omitted).

In reviewing a motion for a new trial under Rule 33, a district court "can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is a serious danger that a miscarriage of justice

has occurred – that is, that an innocent person has been convicted." *United States v. Davis*, 397 F.3d 173, 181 (3d Cir. 2005) (internal quotations omitted).  In contrast to a sufficiency of the evidence claim, "when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003).  Motions for a new trial based on the "weight of the evidence" are disfavored and should be " 'granted sparingly and only in exceptional cases.' " *Id.* (quoting *Gov't of Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987)).

## III.        **Discussion**

Defendant offers fifteen arguments regarding why he should be granted a judgment of acquittal or a new trial.  The court will address each argument in turn.[2]

---

[2]As a preliminary matter, the Government argues that the jury's findings with respect to sentencing enhancement factors should be accorded significant deference when the court determines Defendant's sentence.  As stated above, because this case was tried after *Blakely* and before *Booker*, the Government submitted the sentencing enhancement factors to the jury for proof beyond a reasonable doubt.  *See supra* n.1. In *Booker*, the Supreme Court excised the Sentencing Reform Act provisions that made the United States Sentencing Guidelines mandatory and thus made the Guidelines "effectively advisory." *Booker*, 125 S. Ct. at 757.  In doing so, the *Booker* remedial majority cured the constitutional defects of judicial fact-finding following the Supreme Court's earlier decision in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).  *See Booker*, 125 S. Ct. at 764 ("[W]ithout [18 U.S.C. § 3553(b)(1)]–namely the provision that makes the relevant sentencing rules mandatory and imposes binding requirements on all sentencing judges–the statute falls outside the scope of *Apprendi*'s requirement.") (internal quotation and alterations omitted).  Because sentencing enhancement factors are no longer required to be submitted to a jury for proof beyond a reasonable doubt, the Government asserts that the jury's findings on these issues should be considered advisory, but should be given substantial deference.  In response, Defendant contends that post-*Booker*, sentencing enhancement factors must still be submitted to a jury and proved beyond a reasonable doubt.

Although the court believes that this issue is more properly addressed in sentencing memoranda than in post-trial motions, the court notes that the Government's characterization of *Booker*'s effect on this particular case is correct.  Sentencing enhancement factors are no longer required to be submitted to a jury, but the jury's findings in this case are certainly entitled to substantial deference.  The jury's findings were made

(continued...)

### A.    Whether the jury's verdict on Count 1 was against the weight of the evidence

The jury found Defendant guilty on Count 1 for distribution or possession with intent to distribute marijuana, cocaine powder, and crack cocaine. Defendant argues that he should be granted a new trial on this count because the only hard evidence produced by the Government to support the charge was marijuana residue discovered in a suitcase in an apartment where Defendant lived and a duffel bag containing several pounds of marijuana recovered from a construction site where Defendant allegedly passed through during his flight from law enforcement officers. Defendant concedes that several other witnesses testified about drug transactions they conducted with him, but Defendant contends that all of these witnesses were impeached.

Upon review of the parties' arguments and their references to the record, the court concludes that, viewing the evidence independently, the jury's verdict with respect to Count 1 is not against the weight of the evidence.  Substantial evidence exists to support a finding that Defendant distributed marijuana, cocaine powder, and crack cocaine or possessed these drugs with an intent to distribute.  The Government produced a significant amount of evidence that implicated Defendant in the sale of marijuana, including the residue in the suitcase, the marijuana recovered in the duffel bag, and the testimony of Jennifer Cassel, Shawn Shepherd, Scott Thomas, Arthur

---

[2](...continued)
under a higher standard of proof even though it is now known that such a standard is not constitutionally required.  As for Defendant's assertion, the court finds this argument to be incorrect.  Because judicial fact-finding under advisory Guidelines does not "increase[] the penalty for a crime beyond the prescribed statutory maximum," *Apprendi*, 530 U.S. at 490, it is unnecessary to submit sentence-enhancing facts to a jury to be proved beyond a reasonable doubt.  *United States v. Crosby*, 397 F.3d 103, 109 n.6 (2d Cir. 2005) ("As a result of the Remedy Opinion in *Booker/Fanfan*, . . . the maximum lawful sentence is the statutory maximum sentence . . . .").

Coley, Charles Miller, Jeffrey Stewart, Rodney Ramsey, Kenneth Hunter, and Richard Roberson who testified about participating in marijuana transactions with Defendant, witnessing such transactions, or witnessing Defendant in possession of large quantities of marijuana.  Likewise, the Government produced the testimony of Scott Thomas, who testified that he approached Defendant about selling cocaine powder to Arthur Coley, but that Defendant refused to sell to him, and Rodney Ramsey, who testified that Defendant offered him cocaine powder as partial payment for a car Defendant purchased from him.  The Government also procured testimony from Kenneth Hunter who testified that he once saw Defendant in possession of one kilo of cocaine powder.  Finally, the Government provided the testimony of Shawn Shepherd, Jeffrey Stewart, Rodney Ramsey, Baron McKinney, Kenneth Hunter, and Richard Roberson who all testified that they either bought crack cocaine from Defendant or saw him in possession of crack cocaine.

Defendant suggests that the jury's verdict was against the weight of the evidence because the Government did not produce actual drugs that were directly attributable to Defendant.  Defendant seems to indicate that the Government needed to provide a "smoking gun," such as drugs that were found on Defendant's person.  The implication of Defendant's argument is that without proof of the actual drugs, Defendant must not have distributed them or possessed them with an intent to distribute.  The court disagrees.

The mere fact that the Government failed to discover drugs in Defendant's possession does not demonstrate the jury's verdict was against the weight of the evidence.  Several witnesses testified that they purchased marijuana and crack cocaine from Defendant.  Similarly, Scott Thomas's and Rodney Ramsey's

testimony evinced Defendant's intention to distribute cocaine powder.  In addition, the Government procured substantial circumstantial evidence that Defendant possessed large quantities of drugs that he used in drug trafficking.  For instance, the Government provided evidence that a duffel bag containing several pounds of marijuana was found at a construction site where Defendant allegedly drove through when he was fleeing from law enforcement officers.  Defendant correctly points out that his finger prints were not discovered on the duffel bag and that no witness specifically identified the duffel bag as belonging to Defendant.  Nevertheless, the Government provided the testimony of Jennifer Cassel who testified that Defendant told her he threw a duffel bag containing marijuana out of his van during the chase. The Government also provided the testimony of Stephen Warren, a construction worker at the site in question, who testified that he saw a van driven by a black male pass through the construction zone at a high speed before the duffel bag was found. Thus, circumstantial evidence exists to support a reasonable inference that the duffel bag belonged to Defendant.  *See Tibbs v. Florida*, 457 U.S. 31, 38 n.11 (1982) ("The verdict may be based in whole or in part on circumstantial evidence.") (internal quotation omitted).[3]  In short, the Government produced sufficient evidence to support the jury's verdict even in the absence of proof that Defendant had drugs in his possession at and around the time of his arrest.

---

[3]The marijuana discovered in the duffel bag is just one example of how the Government produced circumstantial evidence to support its case.  As stated previously, the Government also produced evidence regarding the marijuana residue in the suitcase as well as the testimony of numerous witnesses.  Granted, this circumstantial evidence is subject to alternative interpretations as Defendant consistently points out.  However, it is part of the total sum of evidence introduced by the Government that together corroborates a finding that Defendant distributed or possessed with an intent to distribute controlled substances.

Defendant asserts that the witnesses who testified about their knowledge of Defendant's involvement in drug trafficking were all impeached in some way. Defendant points out that many of the Government's witnesses were being prosecuted by the Government for various crimes and that they had an agreement with the Government for some sort of leniency in the Government's prosecution of their case in exchange for their testimony. The court concedes that most or all of the Government's witnesses were impeachable; however, the court concludes that a jury verdict based on these witnesses' testimony would not result in a miscarriage of justice.

Witnesses of this nature are common in criminal cases. The persons who can best attest to a defendant's criminal behavior are those who engaged in the criminal behavior with the defendant. These witnesses would most likely not testify unless provided some incentive, and the jury was instructed about the weight to be given such testimony. Additionally, Defendant admits that these witnesses could also be motivated to tell the truth in order to receive leniency. Nonetheless, in this case the Government produced substantial corroborative evidence that served to counteract the potential bias of the witnesses. For instance, Shawn Shepherd, Scott Thomas, Jeffrey Stewart, Rodney Ramsey, Kenneth Hunter, and Richard Roberson all had some basis for being impeachable, but they all testified that Defendant distributed marijuana to them. The cumulative impact of such corroborative evidence offsets the potential bias these witnesses may have had and supports a conclusion that the jury's verdict was not against the weight of the evidence.

Finally, Defendant offers alternative interpretations of the evidence presented at trial to suggest that because another conclusion could have been

reached, the jury's verdict was against the weight of the evidence.  The court finds this argument unpersuasive for two reasons.  First, some of the alternative interpretations submitted by Defendant are not credible.  For example, Baron McKinney testified that he bought crack cocaine from Defendant between the summer of 2001 and November 2002.  Defendant contends that this testimony is not believable because another witness, Jeffrey Stewart, testified that the quality of Defendant's crack was poor and that he told others about the poor quality. McKinney would not have bought so much crack cocaine from Defendant, Defendant posits, if the quality of the crack was poor.  Defendant's conclusion is tenuous.  The evidence does not reflect that Stewart told McKinney specifically that Defendant's crack cocaine was lacking.  Further, Stewart's mere opinion that the particular crack Defendant offered to him was poor in quality does not mean that all the crack Defendant sold was inadequate or that McKinney might have enjoyed the crack despite its poor quality.  In short, Defendant offers some alternative explanations that are not plausible.

Second, although the jury *could* have reached some of the alternative interpretations submitted by Defendant, none of the alternative interpretations are so convincing that the jury would have been compelled to reach the alternative result.  In other words, Defendant does not demonstrate that the evidence was so one-sided on any particular issue that a fact-finder's conclusion toward a different outcome was against the weight of the evidence.  In their briefs, both parties set forth in significant detail the evidence presented at trial that supported their respective positions that Defendant was or was not guilty of the conduct charged in Count 1.  Although some of the evidence presented at trial was conflicting, the court finds that, making its own

assessment of the evidence, the Government presented enough credible evidence that supports the jury's verdict that Defendant committed the conduct charged in Count 1. In sum, the court concludes that the jury's finding on Count 1 was not against the weight of the evidence.

> **B.     Whether the evidence was insufficient to convict Defendant on Count 2 or, in the alternative, whether the jury's verdict on Count 2 was against the weight of the evidence**

The jury found Defendant guilty on Count 2 for conspiracy to distribute or possess with intent to distribute marijuana, cocaine powder, and crack cocaine. Three elements must be established to show a conspiracy: (1) a unity of purpose between the alleged conspirators, (2) an intent to achieve a common goal, and (3) an agreement to work together toward that goal. *United States v. Pressler*, 256 F.3d 144, 149 (3d Cir. 2001) (internal quotation omitted). Defendant argues that the record is devoid of evidence showing an agreement between Defendant and other parties to commit the underlying offense, distribution of controlled substances or possession with intent to distribute. In the alternative, Defendant asserts that the jury's finding on Count 2 is against the weight of the evidence because the Government's evidence regarding the drug conspiracy was based on testimony by impeached witnesses who in any event did not admit to "conspiring" to sell drugs with Defendant.

The Government responds that it presented sufficient direct and circumstantial evidence that Defendant was involved in a conspiracy to distribute marijuana with Jennifer Cassel, Shawn Shepherd, Scott Thomas, Jeffrey Stewart, Tubby Ramsey, Kenneth Hunter, and Richard Roberson; a conspiracy to distribute crack cocaine with Jeffrey Stewart, Kenneth Hunter, Richard Roberson, and "Nick";

and a conspiracy to distribute cocaine powder with Shawn Shepherd and Tubby

Ramsey.  In his reply, Defendant contends that if the conspiracies existed as the

Government alleges, there was a material variance between the conspiracy charged in

the Sixth Superseding Indictment and the proof offered by the Government at trial.

The court ordered the Government to respond to Defendant's assertion in a sur-reply

brief, and in that brief, the Government acknowledged that

> [r]ather than stating that the specified witnesses established
> that the defendant was involved in a conspiracy to
> distribute specified drugs, it would have been more
> appropriate for the government to state that the specified
> witnesses established that the defendant distributed drugs
> and corroborated that he was involved in a conspiracy to
> facilitate drug trafficking through his activities at Cars on
> Credit, Inc.

(Gov't's Sur-Reply Br. at 10 n.2.)  In other words, the Government repudiates its

original assertion that three conspiracies existed and argues that the evidence it

presented at trial sufficiently established that Defendant was involved in a single

conspiracy, consistent with the one alleged in Count 2 of the Sixth Superseding

Indictment, to sell cars to known drug dealers and, in doing so, to facilitate drug

trafficking.[4]

Upon consideration of the Government's arguments and its citations to

the record, the court concludes that, drawing all reasonable inferences in favor of the

jury's verdict, the evidence presented at trial was insufficient to support Defendant's

conviction on Count 2.  In Count 2 of the Sixth Superseding Indictment, Defendant

---

[4]To clarify, the court is satisfied that a variance did not occur in this case.  The Government has demonstrated that Defendant had notice of the conspiracy alleged in Count 2 of the Sixth Superseding Indictment and that the evidence presented at trial went toward this alleged conspiracy.  The court's analysis, therefore, is focused on whether the evidence the Government produced at trial in support of the single conspiracy alleged in Count 2 was sufficient to support the conviction.

was charged with conspiring with indicted and unindicted co-conspirators to distribute or possess with intent to distribute marijuana, crack cocaine, and cocaine powder.  Prior to trial, the Government provided Defendant with ample notice of the conspiracy it intended to prove at trial, namely that Defendant and others facilitated drug trafficking by permitting known drug dealers to purchase vehicles with large quantities of cash and to put the title in a straw party's name.  The Government contends that at trial, it produced sufficient evidence to support this alleged conspiracy.  The court, however, finds that the Government failed to establish that Defendant entered into an agreement with others to distribute or possess with the intent to distribute controlled substances.

Testimony the evidence the Government presented at trial demonstrated that Shawn Shepherd, Chad Smith, and Defendant knowingly sold cars to drug dealers and structured the transactions in such a way as to conceal the drug dealers' identities.  (*See* Trial Tr., Shepherd Test. at 356 *ll*.6-11.)  In its sur-reply, the Government cited to trial testimony that demonstrated that Shepherd, Smith, and Defendant had conversations about the advantages of selling to drug dealers.  The Government also pointed to the trial testimony of drug dealers who described how they used the cars they bought from Cars on Credit, Inc. to transport drugs and travel to and from drug transactions.  (*See* Trial Tr., Jones Test. at 840 *ll*.8-11.) What is missing from the evidence presented at trial, however, is any indication that Defendant entered into an agreement with others for the *specific purpose* of distributing marijuana, crack cocaine, or cocaine powder.  The Government's reliance on evidence showing that Shepherd, Smith, and Defendant sold cars to known drug dealers and in doing so generally facilitated drug trafficking is not

enough.  The evidence presented at trial failed to establish how Shepherd, Smith, and Defendant's decision to sell cars to drug dealers facilitated actual or potential drug transactions.  Granted, multiple drug dealers testified that they used the cars in transporting drugs, but the evidence did not demonstrate that they were sold cars for the purpose of selling drugs.  In fact, the evidence demonstrates that Shepherd, Smith, and Defendant sold cars to drug dealers for reasons that had nothing to do with the sale of drugs.  For instance, drug dealers bought high-priced cars, paid in cash, did not try to negotiate, and did not look under the hood of the car. Additionally, when drug dealers went to jail, the car would "boomerang" back to the dealership.  The record is devoid of evidence showing an *agreement* to provide transportation to drug dealers for purpose of distributing marijuana, crack cocaine, or cocaine powder.

The only two pieces of evidence that could potentially establish a connection between Shepherd, Smith, and Defendant's activities at Cars on Credit, Inc. and the sale of drugs are that drug transactions occurred at the car lot and that Arthur Coley was given a salesman's license and dealer plates, which allowed Coley to conceal his drug trafficking activities.  First, the Government produced evidence at trial showing that Defendant conducted or discussed drug transactions at the Cars on Credit, Inc. lot.  The Government, however, did not establish that an *agreement* between Defendant and others existed to distribute drugs.  The mere fact that drug transactions occurred at the lot does not implicate others involved with the business or the drug dealers that bought cars there in a conspiracy.  Indeed, the Government essentially concedes as much by stepping back from its assertion that "defendant

was involved in a conspiracy to distribute specified drugs."  (Gov't's Sur-Reply Br. at 10 n.2.)

Second, the Government produced the testimony of Arthur Coley who testified about how the salesman's license he received through Cars on Credit, Inc. helped to conceal his drug trafficking activities.  (*See* Trial Tr., Coley Test. at 677-79.)  The Government, however, did not demonstrate that Coley was provided the license for the specific purpose of concealing his drug activities, even though that may have been Coley's individual intention.  Further, the Government did not show how Coley's receipt of the license facilitated any drug transactions.  Finally, Coley testified that he had no personal knowledge about whether Shepherd and Smith discussed Coley's receipt of the license with Defendant.  (*Id*. at 699 *ll*.12-18.)  Thus, the Government failed to establish that Defendant was involved in an agreement with Shepherd, Smith, and Coley to sell drugs.

In sum, the evidence at trial that Defendant and other indicted and unindicted co-conspirators agreed to sell cars to known drug dealers and structured the transactions to conceal the drug dealers' identities is insufficient to support Defendant's conviction for conspiracy to distribute or possess with intent to distribute marijuana, crack cocaine, and cocaine powder.  The general notion that the activities at Cars on Credit, Inc. facilitated drug trafficking is not enough to establish that a conspiracy existed between specific parties for the specific purpose of selling drugs.  What the Government needed to show was the very thing it has conceded it did not show – "that the defendant was involved in a conspiracy to distribute

specified drugs."[5]  (Gov't's Sur-Reply Br. at 10 n.2.)  Viewing the evidence in a light most favorable to the Government, the court concludes that no rational juror could have found beyond a reasonable doubt the elements of a conspiracy to distribute or possess with intent to distribute marijuana, crack cocaine, and cocaine powder. Thus, the court will grant Defendant's motion for judgment of acquittal on this issue.

### C.   Whether the evidence was insufficient to support the jury's findings with respect to drug quantities

Defendant argues that the evidence presented at trial was insufficient to support the jury's findings as to drug quantities for both Defendant's distribution or possession with intent to distribute controlled substances charge as well as his conspiracy to distribute or possess with intent to distribute controlled substances charge.  In light of the court's conclusion that the evidence was insufficient to support Defendant's conviction of conspiracy on Count 2, the jury's findings with respect to the drug quantities relating to the alleged drug conspiracy must be vacated as moot.  *See supra* Part III.B.  As to the drug quantities relating to Defendant's conviction on Count 1, Defendant argues that the evidence is insufficient to support the jury's findings on this issue because the Government did not produce actual drugs that could be weighed and "independently verified."  (Def.'s Br. Supp. Post-Trial Mots. at 35.)  Defendant contends that the jury's findings on weight were necessarily based on testimony from impeached witnesses.

The court finds Defendant's arguments unconvincing.  The Government did not need to verify the weight by producing the actual drugs distributed.  Courts routinely rely on testimony from persons involved in the drug transactions at issue to

---

[5]Indeed, the Government did not establish whether the drug trafficking activity that was allegedly facilitated specifically involved marijuana, crack cocaine, or cocaine powder.

determine quantity.  *See, e.g., United States v. Givan*, 320 F.3d 452, 463-64 (3d Cir. 2003).  To require drug quantities to be assessed only through amounts recovered would produce consistently underinclusive results.  Criminal defendants would not be held responsible for potentially vast amounts of drugs that were sold, but not recovered because the drugs had been used.  For this reason, drug amounts are often necessarily based on the testimony of persons with first-hand knowledge of a defendant's drug transactions.

Moreover, Defendant does not argue that the testimony provided by the Government was insufficient to support the drug amounts found by the jury, but rather that the testimony lacked credibility because the witnesses were impeached. As the court noted previously, witnesses of this nature are common in criminal cases. *See supra* Part III.A.  Witnesses' testimony regarding drug amounts were corroborated.  The witnesses were subject to cross examination, and the jury was provided an opportunity to assess their credibility in light of the cross examination. The jury was also instructed on the weight to be given testimony of witnesses testifying subject to a plea agreement.  Thus, the court concludes that, drawing all reasonable inferences in favor of the jury's verdict, there was sufficient evidence to support the jury's findings with respect to drug quantities for Count 1.

> **D.     Whether the evidence was insufficient to convict Defendant on Count 3 or, in the alternative, whether the jury's verdict on Count 3 was against the weight of the evidence**

The jury found Defendant guilty on Count 3 of the Sixth Superseding Indictment for criminal conspiracy to commit money laundering.  The elements of money laundering include

> (1) an actual or attempted financial transaction; (2) involving the proceeds of specified unlawful activity; (3) knowledge

16

> that the transaction involves the proceeds of some unlawful
> activity; and (4) either an intent to promote the carrying on
> of specified unlawful activity or knowledge that the
> transactions were designed in whole or in part to conceal
> the nature, location, source, ownership, or control of the
> proceeds of specified unlawful activity.

*United States v. Omoruyi*, 260 F.3d 291, 294-95 (3d Cir. 2001) (citing 18 U.S.C. §

1956(a)(1)).  Defendant argues that the Government produced insufficient evidence

on three aspects of the conspiracy to commit money laundering charge: (1) that an

agreement existed between Defendant and others to commit money laundering, (2)

that Defendant knew vehicles were purchased with drug proceeds, and (3) that

Defendant was involved in such transactions with the intent to promote drug dealing

or with knowledge that the purpose of the transaction was to conceal the nature,

source, location, ownership, or control of drug proceeds.  In the alternative,

Defendant asserts that the jury's finding on these issues was against the weight of the

evidence.

Viewing the evidence in a light most favorable to the Government, the

court concludes that the evidence produced by the Government at trial is sufficient to

support the jury's verdict on Count 3.  First, the Government's witnesses established

that Defendant and others agreed to sell cars to known drug dealers.  (Trial Tr.,

Shepherd Test. at 350 *ll.*9-25, 354 *ll.*10-21; Smith Test. at 597 *ll.*16-21.)  Defendant

contends that he was not involved as a true owner of Cars on Credit, Inc. and that he

functioned more as an "independent contractor."  (Def.'s Br. Supp. Post-Trial Mots.

at 38.)  This may be so, but this arrangement had no effect on Defendant's ability to

enter into an agreement to bring drug dealers into Cars on Credit, Inc.  (Trial Tr.,

Shepherd Test. at 356 *ll.*13-17, 369 *ll.*21-25 to 370 *ll.*1-12.)  Defendant also asserts

that he only had general conversations with Shepherd and Smith about selling cars to

drug dealers and did not specifically agree to engage in money laundering.  The Government, however, was not required to prove a formal agreement among the conspirators.  *See United States v. Scanzello*, 832 F.2d 18, 20 (3d Cir. 1987).  An agreement to enter into a conspiracy "can be proven . . . through circumstantial evidence."  *Id.*; *see also United States v. Gonzalez-Maldonado*, 115 F.3d 9, 20 (1st Cir. 1997) ("Due to the clandestine nature of criminal conspiracies, the law recognizes that the illegal agreement may be either express or tacit and that a common purpose and plan may be inferred from a development and collocation of circumstances.") (internal quotations and citations omitted).  The Government produced evidence that demonstrated that Shepherd, Smith, and Defendant talked about the advantages of selling cars to drug dealers and discussed rationalizations for conducing such transactions.  (Trial Tr., Shepherd Test. at 350 *ll*.16-25, 354 *ll*.2-9.)  Thus, the Government provided sufficient evidence to show an agreement between Defendant, Shepherd, and Smith.

Second, the Government provided sufficient evidence that Defendant knew that the vehicles were purchased with drug proceeds from known drug dealers.  For instance, Shepherd testified about conversations he had with Defendant regarding how they were providing a service to drug dealers who would just spend their money elsewhere and how one of the advantages of selling to drug dealers was that they could pay in cash.  (*Id.*)  Third, the Government produced sufficient evidence to demonstrate that Defendant knew the transactions were designed to conceal the nature of the drug proceeds.  The transactions at Cars on Credit, Inc. often involved putting the title of the vehicle in a straw party's name so that law enforcement officers could not trace the car to the drug dealer.  (*Id.* at 349 *ll*.17-21, 356 *ll*.1-11.)

18

Additionally, the paperwork involved in the transactions frequently did not accurately reflect the amount of cash paid for the vehicle to avoid federal reporting requirements. (*Id*. at 352-53.) In short, drawing all reasonable inferences in favor of the jury's verdict, the court finds that Defendant's conviction on Count 3 was supported by sufficient evidence. For similar reasons, having viewed the evidence independently, the court determines that the jury's verdict on Count 3 is not contrary to the weight of the evidence and that a miscarriage of justice has not occurred.

> **E.      Whether the evidence was insufficient to convict Defendant on Count 4 or, in the alternative, whether the jury's verdict on Count 4 was against the weight of the evidence**

The jury found Defendant guilty on Count 4 of the Sixth Superseding Indictment for possessing a firearm in furtherance of drug trafficking. This crime applies to "any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). Although Defendant concedes that the evidence demonstrated that he owned a gun, Defendant contends that the Government did not produce sufficient evidence to support a finding that he possessed a gun *in furtherance* of a drug trafficking crime. In the alternative, Defendant argues that the jury's verdict on this issue was against the weight of the evidence.

In order to establish possession of a firearm in furtherance of a drug trafficking crime,

> "[t]he government must clearly show that a firearm was possessed to advance or promote the commission of the underlying offense. The mere presence of a firearm in the area where a criminal act occurs is not . . . sufficient . . . .

19

> Rather, the government must illustrate through specific acts,
> which tie the defendant to the firearm, that the firearm was
> possessed to advance or promote the criminal activity."

*United States v. Speight*, 95 F. Supp. 2d 595, 598-99 (S.D. W. Va. 2000) (quoting

H.R. Rep. No. 105-344, 105th Cong., 1st Sess. (1997)).  The Government produced

the testimony of Scott Thomas who testified that during one particular drug

transaction with Defendant, Defendant opened a bag of marijuana and showed

Thomas a gun that was also in the bag.  (Trial Tr., Thomas Test. at 545 *ll*.1-14.)

Defendant had provided the marijuana to Thomas without prior payment, and

Thomas understood the presence of the gun in the bag to mean he "had to bring him

back his money."  (*Id*.)  Thomas also testified that the presence of the gun felt

"intimidating."  (*Id*. at 545 *ll*.23-25 to 546 *l*.1.)  In light of this testimony, the court

concludes that the evidence was sufficient to demonstrate that the gun was not merely

present during the drug transaction, but that the presence of the gun promoted or

furthered the criminal act by intimidating Thomas to ensure payment for the drugs.

Similarly, under the Rule 33 standard, the court finds that the jury's verdict on Count

4 was not against the weight of the evidence despite the fact that Thomas testified

pursuant to a plea agreement.[6]

>    **F.    Whether the evidence was insufficient to find that Defendant
>    brandished a firearm or, in the alternative, whether the
>    jury's finding on this issue was against the weight of the
>    evidence**

The jury found that Defendant brandished a firearm with respect to the

charges in Count 4.  Brandishing a firearm means "to display all or part of the

---

[6]Defendant argued that the Government's witnesses on this issue were all impeached, but he did not specifically list Thomas.  The court assumes that Defendant intended to argue that Thomas was impeached as well.  (*See* Def.'s Br. Supp. Post-Trial Mots. at 47.)

firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person." 18 U.S.C. § 924(c)(4).  Defendant contends that although the Government established that others saw Defendant in possession of a firearm, the Government failed to establish that he made the presence of the firearm known to others for the specific purpose of intimidation.  The court disagrees.

As set forth above, the Government produced the testimony of Scott Thomas who testified that he felt intimidated by Defendant's display of a firearm during one of their drug transactions.  (Trial Tr., Thomas Test. at 545 *ll*.23-25 to 546 *l*.1.)  Because Thomas had just started dealing with Defendant and because Defendant provided the marijuana to Thomas without prior payment, Thomas believed Defendant was warning him to not "mess up his money."  (*Id*. at 545 *ll*.9-10.)  Given these circumstances, the court finds that a rational trier of fact could have found that Defendant displayed the gun to Thomas with the specific intent to intimidate him.  The fact that Defendant never took the gun out of the bag does not change this result.  The presence of the firearm was made known to Thomas.  For similar reasons, the court concludes that the jury's verdict was not against the weight of the evidence even though Thomas was impeachable.

### G.     Whether the jury's special finding that Defendant possessed a deadly weapon was against the weight of the evidence

Defendant argues that the jury's special finding that Defendant possessed a deadly weapon is against the weight of the evidence because the witnesses who provided testimony on this issue were impeached and because a few witnesses testified that they never saw Defendant with a firearm.  Even though many of the Government's witnesses were impeachable, the Government provided

substantial corroborating evidence on this issue.  Several witnesses testified that they observed Defendant in possession of firearms on multiple occasions.  Further, the court has already determined that there was sufficient evidence that Defendant possessed a firearm in furtherance of drug trafficking and that Defendant brandished a firearm.  *See supra* Parts III.E., III.F.  Thus, the court finds that the jury's special finding on this issue was not against the weight of the evidence.

> **H.**   **Whether the evidence was insufficient to support the jury's special finding that Defendant obstructed or impeded or attempted to obstruct or impede the administration of justice or, in the alternative, that the jury's special finding on this issue was against the weight of the evidence**

The Government produced evidence that Defendant believed that Baron McKinney provided information about him to law enforcement officers.  McKinney testified that Defendant asked him to write a letter saying that the statements he made were false.  (Trial Tr., McKinney Test. at 879 *ll*.17-25.)  Defendant sent McKinney such a letter, and McKinney signed it.  (*Id*. at 880 *ll*.1-7.)  Another Government witness, Otis Grayson, provided corroborating testimony about this series of events.  (*See* Trial Tr., Grayson Test. at 291-94.)  Drawing all reasonable inferences in favor of the verdict, the court concludes that this evidence was sufficient to support the jury's finding.

Defendant argues that the evidence is deficient because it only demonstrates that Defendant merely asked McKinney to recant what he previously said and does not show that Defendant threatened McKinney.  A threat, however, is not a required element of an obstruction of justice conviction.  Persuading a witness to recant his or her prior statement would certainly qualify.  Regardless, McKinney's testimony indicates that he felt threatened by Defendant's actions.  He testified that he

22

signed the letter "[t]o keep any kind of drama from happening." (Trial Tr., McKinney Test. at 880 *ll.*13-14.) In any event, Defendant fails to establish that the Government's evidence was insufficient to support the jury's special finding that Defendant obstructed or impeded or attempted to obstruct or impede the administration of justice.

Defendant's argument that the jury's special finding on this issue was against the weight of the evidence is based on the fact that Otis Grayson and Baron McKinney were impeachable. This fact alone, however, does not mean that the jury's special finding was against the weight of the evidence. Additionally, as stated above, the facts relating to Defendant's obstruction of justice conviction were corroborated. Because Defendant offers no other arguments, the court finds that the jury's special finding that Defendant obstructed or impeded or attempted to obstruct or impede the administration of justice was not against the weight of the evidence.

I.   **Whether the evidence was insufficient to support the jury's special finding that Defendant recklessly created a risk of death or serious bodily injury to another person in the course of fleeing from law enforcement officers**

Defendant argues that the evidence is insufficient to establish that his conduct created a risk of "death" or "serious bodily injury." Defendant asserts that this risk was not created by the mere fact that he fled from law enforcement officers and that the evidence does not demonstrate that "death" or "serious bodily injury" were foreseeable. The evidence, however, does not show that Defendant merely fled from law enforcement officers. Instead, the Government's witnesses established that Defendant led law enforcement officers on what was essentially a high speed chase in which Defendant swerved into the opposite lane of traffic, sped through a construction zone, and nearly struck an agent with his van. Viewing this evidence in a

light most favorable to the Government, the court concludes that the jury's special finding that Defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from law enforcement officers was supported by sufficient evidence.[7]

**J.      Whether it was prejudicial error for the court to prohibit defense counsel from calling a witness to testify about the Government's witnesses allegedly coordinating their testimony**

During the trial, Defendant's counsel notified the court that he received information that an inmate in a holding cell in the Federal Building, who he could only identify as a Mr. Blackwell, heard the Government's witnesses discuss how they would testify and coordinate their testimony.  Although Defendant's counsel asserts that he motioned the court to sequester witnesses and that the court granted his motion, he concedes that this exchange cannot be found in the trial transcript. Regardless, Defendant's counsel raised the issue of what Mr. Blackwell heard with the court during the trial, and the court precluded Defendant's counsel from calling Mr. Blackwell as a witness because his testimony would be hearsay.  (*See* Trial Tr. at 1010-11.)  Defendant now argues that Mr. Blackwell's testimony would not have been offered for the truth of the matter asserted because it would have only shown that the "spirit of the sequestration order if not the order itself" was violated.  (Def.'s Br. Supp. Post-Trial Mots. at 56.)  Defendant urges the court to hold a hearing to

_____

[7]Defendant appears to argue that the jury's special finding that he recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from law enforcement officers is inconsistent with the jury's finding of not guilty on Count 5 of assault of a federal officer.  The two findings, however, can easily be reconciled.  A finding of assault of a federal officer required intentional conduct whereas the jury's special finding required reckless conduct.  Thus, the jury could have found that Defendant's actions were reckless, but not intentional.

determine whether Mr. Blackwell's testimony would have established a violation of a sequestration order and if it does, to grant Defendant a new trial.

As an initial matter, Defendant cannot establish that a sequestration order was in place.  He admits that no such order is in the record and fails to provide an explanation for why it may have been omitted.  Additionally, when Defendant's counsel raised the issue of what Mr. Blackwell heard with the court, he made no mention of a sequestration order.  (*See* Trial Tr. at 1010-11.)  Although it would have been unusual for a sequestration order to not be in place, it would have been equally unusual for the court to not have put such an order on the record.

Even if there was a sequestration order, the court properly prohibited Mr. Blackwell from testifying.  First, at least part of Mr. Blackwell's testimony would have contained hearsay.  For instance, out-of-court statements regarding efforts to coordinate testimony would have been offered to prove the truth of the matter asserted.  Second, and more importantly, Defendant's counsel waived the issue at trial.  After Defendant's counsel explained the issue to the court at trial, the following exchange occurred:

> THE COURT: Wouldn't that be hearsay anyway?
>
> MR. PINSKEY: No, but it would be – he's – it's what – it wouldn't be hearsay in the sense that you have a witness, and he would be testifying to that, that witness coordinated his testimony with other witnesses.
>
> MS. FAWCETT: It's still an out-of-court statement offered for the proof of the matter asserted, so that would make it hearsay.  And I don't see any exception that it falls under.
>
> THE COURT: I'll think about it.
>
> MR. PINSKEY: It's sort of like the witness saying today, it's blue, and telling somebody else yesterday, it's red, you know.  You know, it's a statement by the witness.

> THE COURT: It's classic hearsay.  And if you can come up with something to convince me otherwise –
>
> MR. PINSKEY: In all the time that – all the free time I have, let me see if I can find some.

(*Id.* at 101 *ll.*21-25 to 1011 *ll.*1-15.)  At trial, the court did not make a definitive ruling on the issue.  Instead, the court allowed Defendant's counsel to acquire more information about the nature of Mr. Blackwell's allegations, and Defendant's counsel failed to raise the issue again.  Based on the limited information Defendant's counsel presented to the court at sidebar (*see id.* at 1010 *ll.*5-18), the court had legitimate concern that Mr. Blackwell's testimony would be hearsay.  Following the exchange described above, the onus was on Defendant's counsel to gather more information and make a proffer.  He failed to do so.[8]  Consequently, Defendant's counsel waived the issue, and it was not prejudicial error for the court to preclude Mr. Blackwell's testimony.

### K.     Whether Count 6 of the Sixth Superseding Indictment must be dismissed because the charge as drafted was insufficient

Count 6 of the Sixth Superseding Indictment charged that certain items were forfeitable to the Government "[b]y virtue of the commission of the offense charged in Count 6 and Count 11 of this indictment by the defendant."  (Sixth Superseding Indictment at 6.)  Defendant argues that Count 6 should be dismissed because the cross-references to the underlying offenses are inaccurate.  Specifically, Count 6 cross-references Count 6, which is the forfeiture count and not an underlying offense, and Count 11, which does not exist in the Sixth Superseding Indictment.

---

[8]Even in his post-trial briefs, Defendant's counsel has failed to indicate that he has gained any more information about the nature of Mr. Blackwell's testimony after nine months has passed since the trial.  In fact, Defendant's counsel still does not know Mr. Blackwell's first name.

26

As a preliminary matter, the Government argues that Defendant failed to timely raise the issue.  Under Federal Rule of Criminal Procedure 12(b)(3)(B), a motion alleging a defect in the indictment must be raised before trial, "but at any time while the case is pending, the court may hear a claim that the indictment . . . fails to invoke the court's jurisdiction or to state an offense."  Defendant argues that Count 6 is "insufficient."  (Def.'s Br. Supp. Post-Trial Mots. at 56.)  The court will construe Defendant's argument as one asserting the failure to state an offense.  Thus, the court finds that Defendant's argument is not untimely.

The Government also argues that Defendant's argument that Count 6 fails to state an offense must fail.  "An indictment is an accusation only, and its purpose is to identify the defendant's alleged offense . . . and fully inform the accused of the nature of the charges so as to enable him to prepare any defense he might have."  *United States v. Stanfield*, 171 F.3d 806, 812 (3d Cir. 1999) (quotations and citations omitted).  An indictment is sufficient "if it, first contains the elements of the offense charged and fairly informs a defendant of the charge against him, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  *Hamling v. United States*, 418 U.S. 87, 117 (1974) (citing *Hagner v. United States*, 285 U.S. 427 (1932) and *United States v. Debrow*, 346 U.S. 374 (1953)); *accord United States v. Cefaratti*, 221 F.3d 502, 507 (3d Cir. 2000) ("An indictment . . . to be sufficient must contain all essential elements of the charged offense.").

The initial indictment did not contain a forfeiture provision with respect to Defendant.  The five subsequent indictments contained a forfeiture count against

Defendant in Count 10.[9]  This count alleged that $17,500 belonging to Defendant, among other things, was forfeitable by virtue of his commission of the offense charged in Count 6 of those indictments, which was the charge against Defendant for distribution or possession with intent to distribute controlled substances.  Thus, the forfeiture count against Defendant correctly and consistently referred to the underlying offense in each of the five indictments preceding the Sixth Superseding Indictment.  Although Count 6 of the Sixth Superseding Indictment erroneously cross-references Count 6 and Count 11, the cross-reference to Count 6 is easily explained by the fact that Count 6 was the distribution or possession with intent to distribute controlled substances charge in the five preceding indictments.[10]  The cross-reference to Count 11 was also not prejudicial to Defendant.  It was clearly meaningless because there was no Count 11 in the Sixth Superseding Indictment.

In short, the Government clearly intended the forfeiture charge to relate to the drug distribution charge.  Indeed, other than merely noting the ambiguity, Defendant does not contend that he was unable to prepare his defense against the forfeiture charge.  Defendant does not argue that Count 6 was otherwise insufficient. Therefore, the court rejects his argument that Count 6 of the Sixth Superseding Indictment should be dismissed.

### L.      Whether the jury's special finding that Defendant's $17,500 was forfeitable was against the weight of the evidence

---

[9]The numbering of the counts changed in the Sixth Superseding Indictment because all of the co-defendants were dropped from the case after the Fifth Superseding Indictment.  The Sixth Superseding Indictment, therefore, had fewer total counts because Defendant was the only remaining defendant in the case.

[10]The cross-reference for the forfeiture charge in the Sixth Superseding Indictment should have been to Count 1.  Count 1 of the Sixth Superseding Indictment was the same as Count 6 in the five preceding indictments – distribution or possession with intent to distribute controlled substances.

The jury made a special finding that $17,500 Defendant gave to Jennifer Cassel to hold was forfeitable.  Property subject to criminal forfeiture includes "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of [a violation of distribution or possession with intent to distribute controlled substances.]"  21 U.S.C. § 853(a)(1).  Defendant asserts that the jury's finding on this issue was against the weight of the evidence because the evidence indicated that the $17,500 could have come from legitimate sources, such as car sales at Cars on Credit, Inc. or Defendant's sale of his house in which he allegedly received $22,000.

In response, the Government cites to testimony that Defendant made relatively little money selling cars and that he actually made no money from the sale of his house.  The Government also cites to testimony regarding the amount of controlled substances Defendant sold to various witnesses and for how much.  Finally, the Government points to testimony describing the fact that Defendant possessed large sums of cash, supported a household in Virginia, and owned several expensive cars.

Upon review of the evidence highlighted by the parties, the court concludes that the jury's finding that the $17,500 was forfeitable was not against the weight of the evidence.  Defendant's two alternative explanations of the source of the $17,500 do not convince the court that "a miscarriage of justice has occurred." *United States v. Davis*, 397 F.3d 173, 181 (3d Cir. 2005) (internal quotations omitted).  First, the Government offered the testimony of Shawn Shepherd and Chad Smith who testified that Defendant did not make a lot of money selling cars at Cars on Credit, Inc.  Defendant merely tries to discount their testimony as an expression

29

of uninformed opinion, but he does not point to any conflicting evidence suggesting that Defendant enjoyed financial success from his work at the car lot.[11]  Second, Defendant intimates that the money came from the sale of his home in which he allegedly received $22,000.  The Government, however, provided witnesses who testified that Defendant made no money from the sale of the house even though on paper it looked as though he did.  In short, Defendant has not established that his car sales or the proceeds from the sale of his house were the likely source of the $17,500 recovered by law enforcement officers.

In contrast, the Government produced a great deal of evidence regarding the substantial sums of money Defendant made from drug transactions.  The Government also demonstrated that Defendant carried a lot of cash, supported a household in Virginia, and drove expensive cars.  Further, the court finds the circumstances in which the money was recovered supports the jury's finding. Defendant called Jennifer Cassel after he fled from law enforcement officers and told her he was in trouble and wanted her to hold some things for her.  (Trial Tr., Cassel Test. at 115 *ll*.22-24.)  Ms. Cassel met with Defendant, and he gave her, among other things, the $17,500.  (*Id*. at 117 *ll*.8-13.)  Under these circumstances, a reasonable inference is that Defendant wanted to hide the $17,500 because it was derived from illegal activities.  In any event, the jury's finding that the $17,500 was forfeitable was not against the weight of the evidence.

---

[11]Defendant cites to the testimony of Shaune McKinnon, Defendant's wife, who testified that Defendant "rotated" cars he gave her, meaning she would use them for a short period of time and then he would take the car back, sell it, and get her another one.  Defendant's suggestion that this testimony shows that Defendant necessarily made a large profit from the sale of the cars "rotated" is incredulous.

Defendant also argues that forfeiture is a form of sentencing enhancement and should have been decided by proof beyond a reasonable doubt. The jury was instructed that a finding of forfeiture need only be based on a preponderance of the evidence standard. In *United States v. Voigt*, 89 F.3d 1050, 1083 (3d Cir. 1996), the Third Circuit held that forfeiture allegations are governed by the preponderance of the evidence standard, not the beyond a reasonable doubt standard. The Third Circuit reasoned that "forfeiture is a form of sentence enhancement that follows a previous finding of personal guilt." *Id*. Defendant, however, argues that the holding in *Voigt* no longer applies in light of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490. Although the Third Circuit has not addressed the precise issue of whether *Apprendi* applies to criminal forfeitures in a precedential decision, *cf. United States v. Criniti*, 41 Fed. Appx. 531, 535 (3d Cir. 2002) (finding that *Apprendi* does not apply to forfeitures), several federal courts of appeals have concluded that "[b]ecause forfeiture is a punishment and not an element of the offense, it does not fall within the reach of *Apprendi*." *See, e.g., United States v. Cabeza*, 258 F.3d 1256, 1257 (11th Cir. 2001). Even following *Blakely* and *Booker*, courts of appeals have held that *Apprendi* does not apply to criminal forfeitures because " 'forfeiture provisions have no statutory maximum.' " *United States v. Fruchter*, __ F.3d __, 2005 WL 1389888 (2d Cir. June 14, 2005) (quoting *United States v. Messino*, 382 F.3d 704, 713 (7th Cir. 2004)).  Thus, the court rejects

Defendant's argument that the forfeiture issue should have been decided by proof
beyond a reasonable doubt.

> **M.    Whether the court committed prejudicial error by denying
> Defendant's motion to dismiss Juror Gargiulo**

During *voir dire*, one of the jurors, Mr. Gargiulo, disclosed that he knew
a proposed defense witness, Troy Ross.  Mr. Ross applied for a salesperson
position with Mr. Gargiulo's company.  (Trial Tr. at 452 *ll.*16-19.)  Mr. Gargiulo
offered Mr. Ross the job, but Mr. Ross never showed up for the position.  (*Id.* at
452 *ll.*23-25.)  Despite this information, Mr. Gargiulo was not struck from the jury.

On the third day of trial, a Government witness, Scott Thomas, realized
that he knew Mr. Gargiulo.  (*Id.* at 450 *ll.*5-8.)  Mr. Thomas sold stereo equipment to
a store Mr. Gargiulo managed.  (*Id.* at 450 *ll.*18-21.)  Additionally, Mr. Thomas may
have referred Mr. Ross to Mr. Gargiulo for the salesperson position.  (*Id.* at 452 *ll.*6-
19.)  Mr. Gargiulo stated that he did not disclose his relationship with Mr. Thomas
during *voir dire* because Mr. Thomas was said to live in Harrisburg and he thought
the Scott Thomas he knew lived in Dillsburg.

When Mr. Gargiulo's relationship with Mr. Thomas was brought to the
court's attention, the court interviewed him as follows:

> THE COURT: How much contact have you had with [Mr.
> Thomas]?
>
> A JUROR: You know, he comes in maybe every month or
> so.  And that started probably back in, I don't know,
> March, April time frame.
>
> THE COURT: This year?
>
> A JUROR: Yeah.
>
> THE COURT: Do you socialize with him?

A JUROR: No, not at all.

THE COURT: Do you go out to lunch with him when he comes along?

A JUROR: I don't even think we've done that.

THE COURT: I guess the important question that we need to ask of you, having that relationship with him, would you give his testimony any greater weight than you would any other witness that might testify?

A JUROR: No, I don't see why.

THE COURT: Is there anything about that relationship that would in any way color your ability to render a fair and impartial decision based on all the evidence that's presented in this case?

A JUROR: No, I don't think there would be anything.

(Trial Tr. at 450 *ll*.22-25 to 451 *ll*.1-21.)  Following this inquiry, the court gave the parties an opportunity to ask follow-up questions, but neither party elected to do so. (*Id*. at 451 *l*.22, 453 *l*.11.)  Defendant then moved to dismiss Mr. Gargiulo as a juror, and the court denied the motion.  (*Id*. at 456 *ll*.15-16.)  Defendant now asserts that he should be granted a new trial because he would have sought to exclude Mr. Gargiulo from the jury by either a challenge for cause or a peremptory challenge had he known about Mr. Gargiulo's relationship with Mr. Thomas.

A court may order a new trial as a result of a juror's failure to disclose information at *voir dire* when the complaining party shows that

"a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial."

33

*United States v. Richards*, 241 F.3d 335, 344 (3d Cir. 2001) (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984)).  In general, a jury's verdict should not be invalidated "because of a juror's 'mistaken, though honest' response at *voir dire*."  *United States v. Hodge*, 321 F.3d 429, 441 (3d Cir. 2003) (quoting *McDonough Power Equip., Inc.*, 464 U.S. at 555)).  Additionally, "excusal [is not] required where the juror knows another participant in the proceedings." *United States v. Calabrese*, 942 F.2d 218, 225 (3d Cir. 1991).

       With these legal principles in mind, the court concludes that a new trial is not warranted because of Mr. Gargiulo's relationship with Mr. Thomas.  The mere fact that Mr. Gargiulo conducted business with Mr. Thomas was insufficient to demonstrate a bias.  *See Hodge*, 321 F.3d at 440-41; *Richards*, 241 F.3d at 344; *Calabrese*, 942 F.2d at 224-25.  Mr. Gargiulo's relationship with Mr. Thomas would have had to "involve a far more compelling connection than mere acquaintance" to justify Mr. Gargiulo's excusal.  *Hodge*, 942 F.2d at 225.  Defendant attempts to show such compelling circumstances by trying to establish a stronger connection between Mr. Gargiulo and Mr. Ross and Mr. Thomas than Mr. Gargiulo originally admitted to.  The court, however, interviewed Mr. Gargiulo about the extent of his relationship with Mr. Thomas and Mr. Ross during the trial, and the court was satisfied with Mr. Gargiulo's explanation.  *See United States v. Salamone*, 800 F.2d 1216, 1226 (3d Cir. 1986) ("[T]he factual determination by the trial court whether a juror can in fact serve is entitled to special deference.") (internal quotation omitted).

Defendant's counsel was provided with an opportunity to ask follow-up questions, and he declined to do so.[12]

In sum, Mr. Gargiulo made a "mistaken, though honest" response during *voir dire*. *McDonough Power Equip., Inc.*, 464 U.S. at 555. The court inquired into Mr. Gargiulo's relationship with Mr. Thomas, and Mr. Gargiulo's responses demonstrated that his association with Mr. Thomas was no more than an acquaintance. Mr. Gargiulo's excusal was not warranted on this ground. *See Calabrese*, 942 F.2d at 225. Thus, the court rejects Defendant's argument that the court committed prejudicial error by denying his motion to dismiss Mr. Gargiulo.

### N.   Whether newly discovered evidence regarding Shawn Shepherd warrants a new trial

On March 2, 2005, Drug Enforcement Agency Special Agents Cunney and Kegerreis interviewed a witness named Lamont Jones. Mr. Jones told the agents that he purchased 2 to 3 ounces of crack cocaine from Shawn Shepherd on three or four occasions. (*See* Def.'s Ex. 4 in Supp. of Post-Trial Mots.) During the trial, Mr. Shepherd testified that he never sold any drugs other than marijuana. (Trial Tr., Shepherd Test. at 477 *ll*.13-14.) He also testified that he never aided or abetted the sale of crack cocaine. (*Id*. at 483 *ll*.9-11.)

On March 4, 2005, Mr. Shepherd took a polygraph examination in which he denied ever selling crack cocaine to Mr. Jones. The test results indicated that Mr. Shepherd was being deceptive in his answers. (*See* Ex. 4 in Supp. of Def.'s

---

[12]The court notes that Defendant refers to newly discovered evidence in support of his argument that Mr. Gargiulo should have been dismissed. The newly discovered evidence is a report Defendant recently received from the Government in which a person named Lamont Jones stated that he bought crack cocaine from Shawn Shepherd and that he was introduced to Shawn Shepherd from someone who worked at Speed of Sound, a store that sold car stereos and that Mr. Ross managed. Defendant attempts to link this evidence to Mr. Gargiulo, but the court does not see how this evidence can be connected to Mr. Gargiulo in any way.

Case 1:03-cr-00251-SHR   Document 555   Filed 07/26/05   Page 36 of 40

Post-Trial Mots.)  Defendant points out, however, that Mr. Shepherd admitted to the polygraph examiner that "he did sell some crack cocaine in the past, years ago, but never large amounts."  (*Id*.)  On March 8, 2005, Mr. Jones underwent a polygraph examination, and he responded negatively when asked whether he lied when he stated that he purchased crack cocaine from Mr. Shepherd.  His test results also indicated that he was being deceptive.  (*Id*.)

Defendant contends that this newly discovered evidence "would have given [the jury] caution to believe Shepherd's testimony."[13]  (Def.'s Br. Supp. Post-Trial Mots. at 65.)  A trial court may, in its discretion, order a new trial based on newly discovered evidence if five elements are found:

> (a) the evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*United States v. DiSalvo*, 34 F.3d 1204, 1215 (3d Cir. 1994).  In applying these five requirements to the instant matter, the court concludes that a new trial is not warranted.

First, although Mr. Shepherd admitted to the polygraph examiner that he sold some crack cocaine in the past, there is no definitive evidence that Mr. Shepherd sold crack cocaine to Mr. Jones.  Both Mr. Shepherd's and Mr. Jones's polygraph

---

[13]Defendant also asserts that the newly discovered evidence would have suggested that he was not involved in a conspiracy to sell drugs.  The court is not convinced that the evidence supports this proposition; however, the point is moot.  The court previously found that the jury's finding that Defendant was involved in a conspiracy to distribute or possess with the intent to distribute controlled substances was supported by insufficient evidence.  *See supra* Part III.B.

examinations indicated that they were being deceptive about their allegations. Second, the evidence that Mr. Shepherd may have sold crack cocaine to Mr. Jones would not have affected the material issues to which Mr. Shepherd testified.  Mr. Shepherd testified about his knowledge of Defendant's drug dealing activities and about the business operations of Cars on Credit, Inc.  Mr. Shepherd's alleged involvement with Mr. Jones would have had no bearing on the substantive issues of the case.  Finally, this evidence would have only related to the impeachment of Mr. Shepherd.  The Government correctly points out that extensive impeachment evidence was already introduced against Mr. Shepherd, including that Mr. Shepherd distributed both marijuana and cocaine powder.  Thus, even if Defendant had produced evidence that Mr. Shepherd sold crack cocaine to Mr. Jones, it would not have made a significant difference in light of the fact that it was already known that Mr. Shepherd sold marijuana and cocaine powder.[14]  For these reasons, the court rejects Defendant's argument that newly discovered evidence regarding Mr. Shepherd warrants a new trial.[15]

---

[14]The Government also points out that assuming Mr. Shepherd would deny that he sold crack cocaine to Mr. Jones as he has consistently done, Defendant would not be able to introduce extrinsic evidence to attack Mr. Shepherd's credibility either through Mr. Jones's testimony or the polygraph examination.  *See* Fed. R. Evid. 608(b).

[15]Defendant offers a different standard, known as the *Larrison* standard, by which to measure his newly discovered evidence argument.  *See United States v. Meyers*, 484 F.2d 113, 116 (3d Cir. 1973) (citing *Larrison v. United States*, 24 F.2d 82, 87 (7th Cir. 1928)).  Under this test, a more lenient standard applies when the newly discovered evidence is based on perjured testimony.  *See United States v. McLaughlin*, 89 F. Supp. 2d 617, 621-22 (E.D. Pa. 2000).  To grant a new trial under this standard, a trial court must find that (1) the testimony given by a material witness was false, (2) the jury might have reached a different conclusion, and (3) the party seeking a new trial was surprised by the false testimony and unable to meet it, or did not know of its falsity until after trial.  *Id.* at 621.  The Third Circuit, however, has never officially adopted the *Larrison* standard.  *United States v. Massac*, 867 F.2d 174, 178 (3d Cir. 1989); *Gov't of Virgin Islands v. Lima*, 774 F.2d 1245, 1251 n.4 (3d Cir. 1985); *Meyers*, 484 F.2d at 117 (finding that a new trial was

(continued...)

**O.    Whether the court should grant Defendant a new trial because the court is not able to impartially decide whether the jury's verdicts are against the weight of the evidence**

Defendant argues that the court should grant him a new trial based on the following syllogistic reasoning.  In order to evaluate a Rule 33 motion, the court must exercise its own judgment of the Government's witnesses.  The court sentenced several of the Government's witnesses who had entered into plea agreements that were conditioned upon their truthful testimony at Defendant's trial.  Because the court apparently determined that the witnesses testified truthfully in reaching a sentence, the court is not able to impartially examine the credibility of the witnesses in evaluating Defendant's Rule 33 motions.  The court flatly rejects Defendant's reasoning.

Defendant's argument is based on erroneous logic.  The court does not make an affirmative determination that each defendant in such a situation testified truthfully.[16]  The Government makes that determination and then may seek to revoke the plea agreement if the defendant did not testify truthfully.  Similarly, if the Government is satisfied that the witness testified truthfully for purposes of fulfilling the conditions of the plea agreement, the court could still find otherwise with respect to a Rule 33 motion.  Regardless, if the court were to accept Defendant's reasoning,

---

[15](...continued)
warranted under either standard).  Regardless, the court finds that a new trial is not warranted in this case even under the *Larrison* test.  As stated above, testimony regarding crack cocaine transactions between Mr. Jones and Mr. Shepherd did not go to the substantive issues of the case.  Likewise, such evidence would not have significantly impeached Mr. Shepherd further in light of the extensive impeachment evidence already admitted against him.  Thus, even if the *Larrison* test applies, the court would reach the same result.

[16]As Defendant acknowledges, some of the Government's witnesses were sentenced by other judges in the Middle District of Pennsylvania.  These other judges were not in position to discern whether the criminal defendants before them testified truthfully in another trial.  These judges had to rely on the Government's representations.

it would lead to highly impractical results.  In short, the court finds Defendant's argument on this issue to be without merit.[17]

**IV.**          <u>**Conclusion**</u>

          In accordance with the foregoing discussion, the court will grant Defendant's post-trial motions in part and deny them in part.  The court will grant Defendant's motion for judgment of acquittal with respect to his argument that the evidence was insufficient to convict Defendant on Count 2, conspiracy to distribute or possess with intent to distribute marijuana, cocaine powder, and crack cocaine.  Consequently, the jury's finding as to drug amounts related to the conspiracy to distribute or possess with intent to distribute controlled substances will be vacated as moot.  The court will deny Defendant's post-trial motions in all other respects.  An appropriate order will issue.

                                        s/Sylvia H. Rambo
                                        SYLVIA H. RAMBO
                                        United States District Judge
Dated:  July 26, 2005.

---

[17]The Government argued that Defendant did not present any caselaw to support his proposition. In his reply brief, Defendant cites to three cases.  However, upon review of these cases, the court finds that each case is limited to its particular facts and not applicable to the instant matter.

39

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **NO.  1:CR-03-251-05** |
| **v.** | : | |
| | : | |
| **MICHAEL MCKINNON** | : | |

# O R D E R

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT**:

1) Defendant's post-trial motions (Doc. 531) are **GRANTED in part** and **DENIED in part** as follows:

a) Defendant's motion for judgment of acquittal is **GRANTED** with respect to Count 2 of the Sixth Superseding Indictment, conspiracy to distribute or possess with intent to distribute controlled substances.

b) The Clerk of Court shall enter judgment of acquittal as to Defendant on Count 2 of the Sixth Superseding Indictment.

c) The jury's findings on drug amounts with respect to Count 2 are **VACATED** as moot.

d) Defendant's post-trial motions are **DENIED** in all other respects.

2) The probation officer assigned to this case shall prepare a pre-sentence report.  Upon completion of the pre-sentence report, the court will set a date for sentencing.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: July 26, July 26, 2005.