**ORIGINAL**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL MCKINNON
        Petitioner,

vs.

        Docket No.: 1:03-CR-00251-SHR
        (Judge Rambo)

UNITED STATES OF AMERICA
        Respondent.
_____/

**FILED**
**HARRISBURG, PA**

JUN 1 4 2010

MARY E. D'ANDREA, CLERK
Per_____, CLERK
        Deputy Clerk

## PETITIONER'S MEMORANDUM OF LAW AND SUPPORTING APPENDIX IN SUPPORT OF MOTION TO CORRECT VACATE, AND/OR SET-ASIDE SENTENCE AND CONVICTION PURSUANT TO TITLE 28 U.S.C. § 2255

    Comes now petitioner Michael McKinnon with this his Memorandum of Law and Supporting Appendix in support of his Motion to Correct, and/or Set Aside Conviction and Sentence pursuant to Title 28 U.S.C. Section 2255 and in support provides as follows:

### SUMMARY OF THE PROCEDURAL HISTORY

    On July 21, 2004 a grand jury sitting in Harrisburg, Pennsylvania, returned a, sixth superseding indictment charging Petitioner McKinnon with distribution and possession with intent to distribute crack cocaine, cocaine, marijuana and other controlled substances in violation of Title 21 U.S.C. Section 841(a)(1) (Count I), conspiracy to distribute and possess with intent to distribute crack cocaine, cocaine hydrochloride, marijuana, and other controlled substances in violation of Title 21 U.S.C. § 846 (Count II), conspiracy to launder the proceeds in the distribution of controlled substances in violation of Title 18 U.S.C. Section 1956(a) (Count III), possession and use of a firearm during and in relation to a drug trafficking crime in

violation of Title 18 U.S.C. Section 924(c) (Count IV), assault on a federal officer in violation of Title 18 U.S.C. Section 111 (Count V), and criminal forfeiture of $17,500.00 in currency constituting drug proceeds as provided for by Statute 21 U.S.C. Section 853 (Count VI).

The sixth superseding indictment also included special findings of the grand jury regarding various facts giving rise to enhancements under the United States Sentencing Guidelines, due to the uncertainly of the then existing Supreme Court precedent in *Blakely v. Washington,* 542 U.S. 296 (2004).

The trial lasted between September 21 and September 22, 2004. On September 22, 2004 the jury returned verdicts of guilty as to Counts I through IV and verdicts of not guilty as to Counts V a verdict of forfeiture as to Count VI. The special finding returned by the jury as per the verdict sheet included that Petitioner possessed with intent to distribute 1.5 kilograms or more of crack cocaine, 500 grams or more of cocaine hydrochloride, 100 kilograms or more of marijuana. The jury special finding also included that Petitioner conspired to distribute 1.5 kilograms or more of crack cocaine, 500 grams or more of cocaine hydrochloride and 100 kilograms or more of marijuana. Furthermore, the jury found that Petitioner had laundered more than $200,000.00 in drug proceeds and that he had possessed a deadly weapon, that he obstructed justice during the course of the investigation or prosecution, and that he had created a substantial risk of death or serious bodily injury in the course of fleeing from law enforcement officers.

On December 5, 2005, the District Court sentenced petitioner to an aggregate of 40 years imprisonment consisting of 33 years as to Count I a concurrent 20 year sentence as to Count III and a mandatory consecutive seven year sentence as to Count IV together with five years supervised release, a $1,000.00 fine and $300.00 special assessments.

Petitioner proceeded on appeal to the Third Circuit Court of Appeals challenging the terms of his conviction. However, the Court of Appeals affirmed Petitioner's sentence and conviction on December 4, 2008. (See *United States v. McKinnon,* 301 Fed. Appx. 117, 2008 WL 5091546 (C.A. 3 (Pa.)).

Petitioner proceeded to the United States Supreme Court which on June 15, 2009 denied petitioner's request for a Writ of Certiorari. See *McKinnon v. United States,* 129 S.Ct. 2792, 174 L. Ed. 2d 295 (2009).

## ALLEGATION OF JURISDICTION

This Court has jurisdiction to entertain, rule on the merits, and grant relief under Title 28 U.S.C. § 2255 and the principles of *Strickland v. Washington,* 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984)

## STATEMENT AS TO WAIVER, CAUSE, AND PREJUDICE

Mr. McKinnon did not raise Claim Number One on direct appeal because the facts set forth in his § 2255 were and are material to the claim of ineffective assistance of counsel, but were not part of the record for direct appeal.

"Cause" is therefore established for his failure to raise the claim prior to this motion. *Ciak v. United States,* 59 F.3d 296, 303-304 (2nd Cir. 1995); *Bond v. United*

*States*, 1 F.3d 631 (7th Cir. 1994); *Stoia v. United States*, 22 F.3d 766 (7th Cir. 1994) (prisoner's failure to raise ineffective assistance of counsel claim on direct appeal will result in forfeiture of right to bring § 2255 motion only when claim is based entirely on trial record); *English v. United States*, 42 F.3d 473, 481 (9th Cir. 1994)(holding that section 2255 claims are waived for failure to raise them on direct appeal only if (1) a specific procedural rule required the defendant to raise the issues on direct appeal or (2) the failure to raise the issues was a deliberate bypass of direct review). Even if the record on appeal is subsequently determined to have been sufficient to have raised the instant claims of ineffective assistance of counsel, cause exists for the failure of Mr. McKinnon to raise the claims prior to this motion because it reasonably appeared at the time of filing the appeal that new evidence might be necessary to support his claim.

Cause exists for the failure of Mr. McKinnon to raise the instant claims of ineffective assistance of counsel in his direct appeal because such claims should not be brought in direct appeal even if the record is or was sufficient to raise the claims. *United States v. Hardamon*, 188 F.3d 843 (7th Cir. 1999); *United States v. Galloway*, 56 F.3d 1239, 1240-43 (10th Cir. 1995) (en banc); *United States v. Tunstall*, 17 F.3d 245, 246 [4] (8th Cir. 1994).

Mr. McKinnon has properly pleaded "prejudice" by pleading the "fundamental defect" in his sentence, as set forth herein. *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). "Prejudice" to Mr. McKinnon, within the meaning of *United States v. Frady*, 456 U.S. 152, (1982), as construed in case law such as *United States*

4

*v. De La Fuente*, 8 F.3d 1333, 1336-37 (9th Cir. 1993) is established by the fact that absent relief by this Court, Mr. McKinnon sentence is in violation of the Constitution and laws of the United States. *Id. See also Isabel v. United States,* 980 F.2d 60, 64 (1st Cir. 1992) ("prejudice" established, for purpose of "procedural bypass question" where § 2255 movant's "sentencing range would be reduced" if successful on claim).

Based on the foregoing, and the absence of any knowing and intelligent waiver by Mr. McKinnon of his right to bring this motion, this Court is not precluded by the "cause and prejudice" principle from entertaining, ruling on the merits, and granting the relief requested.

## JUDGMENT REQUESTED

Pursuant to Rule 5 of the Rules Governing Section 2255 Proceedings, Mr. McKinnon asks this Honorable Court to **ORDER** an evidentiary hearing where he can prove the allegations herein by: (A) his own testimony; (B) the testimony of Attorney; (C) additional evidence; and (D) legal argument to be presented at the hearing.

Upon proof of Mr. McKinnon's allegations herein, Mr. McKinnon asks this Honorable Court 1) **ORDER** that his conviction be **VACATED** and/or or; 2) that this Honorable Court **GRANT** an evidentiary hearing where the facts may be properly developed on the record.

## MOTION FOR APPOINTMENT OF COUNSEL

Pursuant to Rule 6(c) and Rule 8(c) of the Rules Governing Section 2255 Proceedings, Mr. McKinnon requests that counsel be appointed for discovery and for his evidentiary hearing.[1]

## STATEMENT OF THE FACTS

On September 25, 2003, law enforcement agents went to 220 South 20th Street, Harrisburg, Pennsylvania to serve an arrest warrant on Petitioner. The Agents learned from Shawn Shepherd who had been arrested earlier in the day that Petitioner maintained another residence in the 300 block of Hummel Avenue in Lemoyne, across from Susquehanna River from Harrisburg. At the request of the agents, Shepherd and co-defendant Chad Smith called Petitioner and learned that he was at the Hummel Avenue residence and allegedly, he was aware that law enforcement officers were searching for him.

Later in the afternoon, DEA agents set up surveillance in the area of 308 Hummel Avenue. Shortly thereafter, they saw Petitioner emerge from an area close to the residence and enter a silver van, which the agents knew he owned. The agents attempted to stop Petitioner's vehicle. However, allegedly the Petitioner r sped away and made a right turn onto 3rd Street allegedly driving on the wrong side of traffic.

---

[1] See *United States v. Leopard*, 170 F.3d 1013, 1015 (10th Cir. 1999) ("if an evidentiary hearing is required, the judge shall appoint counsel for a movant who qualifies for the appointment of counsel under 18 U.S.C. § 3006Ab.")

A short time later approximately a mile and a half away, a construction worker saw a vehicle matching the description of Petitioner's vehicle being driven through the construction zone. The truck allegedly knocked over several cones and nearly struck another vehicle in the area.

Immediately after the silver van allegedly sped through the construction zone, a citizen recovered a duffel bag from the newly tarred road. In the duffel bag which the witness recovered allegedly contained seven pounds of marijuana.

According to witness Jennifer Cassel, one of Petitioner's girlfriends, she received a telephone call from Petitioner shortly after he had sped through the area where he allegedly advised her that he was fleeing from police. The witness testified that allegedly Petitioner had advised her that he had dumped a quantity of marijuana and that she should meet him by Cedar Cliff High School where she allegedly received a briefcase containing car titles, documents, Petitioner's wallet, jewelry, and approximately $17,500.00 in cash.

The agent subsequently obtained a search warrant to search Petitioner's apartment later in the day. In the course of the search, they discovered a suitcase which was large enough to hold the alleged seven pounds of marijuana Petitioner had dumped and allegedly, the suitcase contained marijuana residue.

During the trial, the witness Cassel testified that she had traveled with Petitioner on several occasions to New York City and had purchased quantities of marijuana from a source that she did not know. The government presented a list of

different motels in New York City where allegedly Petitioner stayed while the marijuana was supposedly "broken down" into smaller packages.

Cassel further testified that she stored a gun for Petitioner in her residence for several weeks. She testified that Petitioner retrieved the gun when he was having "problems" with someone at Cars on Credit, Inc., a business in which Petitioner was involved.

Another government witness Jennifer Robinson testified that she was another one of Petitioner's girlfriends and that she leased an apartment at 308 Hummel Avenue in Lemoyne. She testified that she often stayed there and on one occasion, she allegedly saw a firearm in the residence. She advised Petitioner to remove the firearm at which time she testified that she observed Petitioner take the firearm into a locked room where she did not have a key to access.

After Petitioner's arrest, he was incarcerated with defendant Otis Grayson. Allegedly, Grayson heard that Petitioner had advised him that he wished he had hit the agents when he had fled on that date. Further testifying that Petitioner showed him documents relating to information regarding his drug dealings from a confidential informant number three.

He testified that Petitioner advised that CI number three was "Baron" and that he was trying to have Baron sign an affidavit stating that the information in the document was false.

Co-defendant Arthur Coley testified that he was a car salesman for Cars for Credit, Inc. and that he obtained his car salesman license through the business.

Coley testified that his primary source of income was drug trafficking and that while being a car salesman permitted him to launder and thus conceal his own drug proceeds also providing a cover story for law enforcement if he was ever stopped in expensive cars or carrying large amounts of cash.

Coley's testimony in conjunction with Chad Smith's testimony and Shawn Shepherd's testimony helped establish an inference that Petitioner also used as position for Cars for Credit, Inc. as a front to launder his own drug process and the drug proceeds of others.

Several other cooperating witnesses testified that they themselves were drug dealers requesting sentence reductions for their cooperation, and testified that they had purchased both crack cocaine and cocaine during the times of the charged in the indictment. All of the cooperating witnesses were testifying with the expectancy of sentence reductions based on their own wrong doings.

## ARGUMENT

## I. THE CONVICTION AND/OR SENTENCE OF MR. MCKINNON IS VIOLATIVE OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

### 1) The Performance of Counsel for Mr. McKinnon Fell below an Objective Standard of Reasonableness during the Trial and Appellate Phases

#### a. Standard of Review - Ineffectiveness

In *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), the Supreme Court established a two prong test to govern ineffective assistance of counsel claims. To obtain reversal of a conviction or to vacate a

sentence based on ineffective assistance of counsel the defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's objectively unreasonable performance, the result of the proceeding would have been different. *Id.* 466 U.S. at 688-689; *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000).

The Court stated that, "judicial scrutiny of counsel's performance must be highly deferential" and added, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance". *Id*

The Court clarified that this reference to "highly deferential scrutiny"[2] referred only to the first or performance prong of the test and meant that,

> "... the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

*Id. Strickland v. Washington*, 466 U.S. at 689-691

The Court added that,

> "... strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make a reasonable and proper decision that makes particular investigations unnecessary." *Id.*

---

[2] The Court stated that "factors which may actually have entered into counsel's selection of strategies and ... may thus affect the performance inquiry ... are irrelevant to the prejudice inquiry." *Strickland v., Washington*, 466 U.S. at 695.

Two years after its *Strickland* decision, the Court reaffirmed that this portion of the decision sets forth what test can be made in evaluating whether counsel was within the range of "reasonable professional assistance," or fell below an objective standard of reasonableness.[3] *Kimmelman v. Morrison*, 477 U.S. 365, 385-387, 91 L.Ed.2d 305, 106 S.Ct. 2574 (1986). *See also*: *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000).

The Supreme Court noted that,

"a single, serious error may support a claim of ineffective assistance of counsel." *Id. Kimmelman v. Morrison*, 477 U.S. at 384.

The Court added that this "single serious error" could cause counsel's performance to fall "below the level of reasonable professional assistance," even where, "counsel's performance at trial was "generally creditable enough," and even where counsel had made "vigorous cross-examination, attempts to discredit witnesses, and [an] effort to establish a different version of the facts." *Id.* 477 U.S. at 386.[4]

---

[3] This presupposes, for the instant argument, that the defendant provided counsel with complete and accurate information and did not place any restrictions on counsel's strategy. *Id. Strickland v Washington*, 466 U.S. at 691.

[4] See also *Murray v. Carrier*, 477 U.S. 478, 496, 91 L.Ed.2d 397, 106 S.Ct. 2639 (1986) ("The right to effective assistance of counsel ... may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial."); *Smith v. United States*, 871 F.Supp. 251, 255 & [n.8] (E.D. Va. 1994) (finding performance below constitutional standards for "failure to raise an objection to a clear and indisputable error in. the PSR", but pointing out that "error was an innocent inadvertence, and not indicative of the entirety of counsel's representation of petitioner, which was competent and effective in all other respects.); *United States v. Al King Jones*, 2001 U.S. Dist. LEXIS 1740 (ED. LA 2-9-01) (same).

The government argued, and the Court agreed that the determining factor was whether or not counsel's "single serious error" or "failure" was the result of, or attributable to, a trial "strategy". *Id.,* 477 U.S. 384-386; *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000).

The Court then found that no "strategy" was involved in that case and that counsel's performance thereby fell below the *Strickland v. Washington* objective standard because counsel's failure was based "on counsel's mistaken beliefs" as to the laws governing discovery. *Id.* 477 U.S. at 385.

The Supreme Court added:

> "Viewing counsel's failure to conduct any discovery from his perspective at the time he decided to forego that stage of pretrial preparation and applying a 'heavy measure of deference', *ibid.*, to his judgment, we find counsel's decision unreasonable, that is, contrary to prevailing professional norms. The justification Morrison's attorney offered for his omission betray a startling ignorance of the law--or a weak attempt to shift blame for inadequate preparation. 'Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' *Id.* Respondent's lawyer neither investigated, nor made a reasonable decision not to investigate the State's case through discovery."

*Id. Kimmelman v. Morrison*, 477 U.S. at 385.

In other words, the Court determined that counsel's omissions were not part of any "strategy" or trial tactic because they had not been taken after thorough investigation of the law and facts relevant to all plausible options available to counsel. From this, the Court determined that the omissions were professionally unreasonable and had caused counsel's performance to fall below the objective standard of *Strickland. See Kimmelman v. Morrison*, 477 U.S. at 385-387; *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000). In short, no deference is

due to counsel's actions, and the performance of counsel falls below the *Strickland* objective standard of reasonableness[5] if counsel's specific acts or omissions are not demonstrably[6] the result of actual strategic choices made between or among all plausible options "after thorough investigation of law and facts relevant to all possible options." *Strickland,* 466 U.S. at 691; *Kimmelman v. Morrison,* 477 U.S. at 385-387; *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00).[7] Where a convicted defendant is making a claim of ineffective assistance of counsel, the defendant,

---

[5] For purposes of this portion of the *Strickland* analysis, the Court presumes that counsel's failures were at least potentially prejudicial to the defendant. *Kimmelman v. Morrison,* 477 U.S. at 365, 387, 390-91.

[6] *See United States v. Burrows,* 872 F.2d 915, 918-919 (9th Cir. 1989)(record must "conclusively" demonstrate strategic nature of counsel's actions); *Harris v. Reed,* 894 F.2d 871, 878 (7th Cir. 1990) (reviewing court should "not construct strategic defenses which counsel does not offer")(*citing Kimmelman v. Morrison,* 477 U.S. at 386); *Moffet v. Kolb,* 930 F.2d 1156, 1160-61(7th Cir. 1991)(counsel's unexplained failure to use available police report, to impeach prosecution witness's statements and support theory of defense, below objective standard of *Strickland*); *United States v. Headley,* 923 F.2d 1079, 1084 (3rd Cir. 1991) (remanding for hearing where there was " rational basis" in the record to believe that sentencing counsel's failure, to argue for downward adjustment in Sentencing Guidelines for minor role, was a "strategic choice"); *United States v. Acklen,* 47 F.3d 739, 743-44 (5th Cir. 1995) (remanding for evidentiary hearing where there was nothing in record to indicate counsel's failures were attributable to strategic choice among all plausible alternatives available for defense); *United States v. Dawson,* 857 F.2d 923, 929 (3rd Cir. 1988) (absent evidence in the record, "this court will not speculate on trial counsel's motives"); *Nichols v. United States,* 75 F.3d 1137 (7th Cir. 1996) (same).

[7] The courts have decided that counsel's failure to consider or investigate laws and facts relevant to potentially viable defenses cannot be said to be the result of reasonable professional judgment, nor can it be termed "strategic" or "tactical' or "objectively reasonable", because "counsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when he has not yet obtained the facts on which such, a decision could be made." *Gray, supra,* 878 F.2d at 711 (citing *Strickland,* 466 U.S. at 690-91); *Holsomback v. White,* 133 F.3d 1382(11th Cir. 1998) (same); *Nichols v. United States,* 75 F.3d 1137 (7th Cir. 1996).

"must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."

*Id. Strickland v. Washington*, 466 U.S. at 690.

If the record does not "conclusively" demonstrate "strategic reasons" for counsel's failures, the district court entertaining a motion under 28 USC § 2255 must hold an evidentiary hearing. [8] *A subsequent affidavit from counsel will not suffice to establish a trial strategy, nor absolve the district court from the requirement of holding an evidentiary hearing.* [9]

In the instant case, Mr. McKinnon has made specific, sworn, factual allegations which this Court should accept as true for the purpose of considering whether to hold an evidentiary hearing, because they are not conclusively disproved by the files and records of this case.

---

[8] *See United States v. Burrows*, 872 F.2d 915, 918-919 (9th Cir. 1989); *United States v. Briggs*, 939 F2d 222, 228 (5th Cir. 1991); *United States v. Estrada*, 849 F.2d 1304, 1306-1307 (1st Cir. 1988) and *Virgin Islands v. Weatherwax*, 20 F.3d 572, 573 (3rd Cir, 1994); *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994) (petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel unless claim inadequate on its face or if records conclusively refute factual assertions of claim); *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994)(evidentiary hearing required unless § 2255 motion, files, and trial record "conclusively show" petitioner entitled to no relief) and *Nichols v. United States*, 75 F.3d 1137 (7th Cir. 1996) (same).

[9] *See Smith v. McCormick*, 914 F.2d 1153, 1170 (9th Cir. 1990) and *United States v. Giardino*, 797 F.2d 30, 32 (1st Cir. 1986) and *Lindhorst v. United States*, 585 F.2d 361, 365 (8th Cir. 1978).

a. Standard of Review – Prejudice

In writing for the majority in *Strickland v. Washington*, 466 U. S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), Justice O'Connor stated the general rule that, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice."

*Id.* 466 U.S. at 693, 80 L.Ed.2d at 697.

More specifically, Justice O'Connor set forth the now well-known statement of the test for "prejudice" in claims of actual ineffectiveness of counsel as:

> "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id.* 466 U.S. at 695, 80 L.Ed.2d at 698.

While the Court noted the government's, perhaps natural, inclination to argue that attorney error is harmless unless the defendant can show that "counsel's deficient conduct more likely than not altered the outcome of the case", [10] the Court specifically and explicitly rejected this argument by the government.

In rejecting any outcome determinative test such as that employed in Federal Rule of Criminal Procedure 33 analysis, the Court stated:

---

[10]This, of course, means that the 'plain error" standard also does not apply to ineffective assistance of counsel claims. *Id. See United States v. Olano*, 507 U.S. 725, 735 (1993) (plain error "must be real and such that it probably influenced the verdict.")

> The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.

*Id.* *Strickland v. Washington,* 466 U.S. at 694; *Williams Taylor,* 120 S. Ct. 1495, 1519, (2000)[11]

The Court further specifically rejected the application of the "actual prejudice"

standard of *United States v. Frady,* 456 U.S. 152, 71 L.Ed.2d 816, 102 S.Ct. 1584

(1982), to claims of ineffective assistance of counsel, with the following

admonishment:

> "The principles governing ineffectiveness claims should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial. As indicated by the 'cause and prejudice' test for overcoming procedural waivers of claims of error, the presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment. *See United States v. Frady,* 456 U.S. 152, 162-169, 71 L.Ed.2d 816, 102 S.Ct. 1558 (1982). An ineffectiveness claim, however, as our articulation of the standards that govern decision of such claims makes clear, is an attack on the fundamental fairness of the proceedings whose result is challenged. Since fundamental fairness is the central concern of the writ of habeas corpus, *see id.* at 126, no special standards ought to apply to ineffectiveness claims made in habeas proceedings."

---

[11] *See also United States v. Day,* 969 F.2d 39, 45 and [n.3] (3rd Cir. 1992) (same) and *United States v. Loghery,* 908 F.2d 1014, 1018-1020 (D.C. Cir. 1990) (same). While some Courts have held that *Lockhart v. Fretwell,* 506 U.S. 364, 373, 122 L.Ed.2d 180, 189, 113 S.Ct. 838 (1993) modified *Strickland* "to require a separate inquiry into fundamental fairness even when [Petitioner] is able to show that his lawyer was ineffective and that his ineffectiveness probably affected the outcome of the proceeding", *Williams v. Taylor,* 120 S. Ct, 1495, 1512-16, 146 L. Ed. 2d 389 (2000), this construction of *Lockhart v. Fretwell,* was specifically addressed and rejected by the Supreme Court in *Williams v. Taylor.* The Supreme Court's holding in *Lockhart v. Fretwell,* was limited to circumstances where the "different outcome" would be contrary to the law. *Id.* As Justice O'Connor carefully pointed out in *Lockhart v. Fretwell,*:

> "... today's decision will, in the vast majority of cases, have no effect on the prejudice inquiry under *Strickland.* The determinative question - whether there is 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different' ... remains unchanged," *Id.* 506 U.S. at 373 (O'Connor) (concurring).

*Id. Strickland*, 466 U.S. at 697-98, 80 L.Ed.2d at 700.[12]

The Court hearing an ineffectiveness claim should consider the totality of the factors which guided the decision maker in the challenged proceeding, then try to determine which factors were or were not "affected" by counsel's errors.

> "Taking the unaffected [factors] as a given, and taking due account of the effect of the errors on the remaining [factors] a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."

*Id. Strickland v. Washington*, 466 U.S. at 696, 80 L.Ed2d at 699.

Where through "hindsight"[13] the Court can determine that, but for the errors of counsel, there is a "reasonable probability" of a different outcome, a probability sufficient to "undermine confidence" in the challenged proceedings, the defendant has affirmatively proven prejudice. *Strickland*, 466 U.S. at 694-95; *United States v. Glover*, 121 S.Ct. 696 (2001); *Williams v Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000).[14]

---

[12] *See Kimmelman v. Morrison*, 477 U.S. at 375, 393 and [n.1] (demonstration of "a reasonable probability" that the verdict would have been different constitutes "actual prejudice" in claims of actual ineffective assistance of counsel); *Oshorn v. Shillinger*, 861 F.2d 612, 626 and [n.13] (10th Cir. 1988) (same); *Smith v. United States*, 871 F.Supp. 251, 255 (ED. Va. 1994) (same).

[13]*Lockhart v. Fretwell*, 122 L.Ed.2d at 189-91; *Mayo v. Henderson*, 13 F.3d 528, 534 (2nd Cir. 1994) (prejudice determination, unlike performance determination, may be made with benefit of hindsight")

[14] In *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00), the Supreme Court recently, explicitly, rejected the theory that *Lockhart v. Fretwell*, 506 U.S. 364, 373, 122 L.Ed.2d 180, 189, 113 S.Ct. 838 (1993) somehow modified *Strickland* "to require a separate inquiry into fundamental fairness even when [petitioner] is able to show that his lawyer was ineffective and that his ineffectiveness probably affected the outcome of the proceeding". *Williams v. Taylor*, 120 S.Ct. 1495, 1512-116, 146 L.Ed.2d 339 (4-18-00). This construction of *Lockhart*

This rule is applicable to find "prejudice" where hindsight demonstrates that counsel's constitutionally deficient performance deprived a federal criminal defendant of a consideration for a favorable adjustment or downward departure under the United States Sentencing Guidelines. *United States v. Glover*, 121 S.Ct. 696 (2001)(rejecting Court of Appeals' rule that only a 'substantial' change in application of sentencing guidelines constituted "prejudice" within the meaning of *Strickland*).[15]

The *Strickland* test for "prejudice" is applicable to cases where a criminal defendant is challenging his conviction or sentence due to actual ineffective

---

*v. Fretwell,* was specifically addressed and rejected by the Supreme Court in *Williams v. Taylor.* The Supreme Court's holding in *Lockhart v. Fretwell,* was limited to circumstances where a "different outcome" would be contrary to the law. *Id.* *See also: Mays v. Gibson,* (10th Cir. 2000)(citing *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000)); *Jackson v. Calderon,* 2000 US App. LEXIS 9049 (9th Cir. 5-8-2000) (same).

[15] *See also United States v. Breckenridge*, 93 F.3d 132, 136 (4th Cir. 1996) ("The failure to object to an improper application of the sentencing guidelines may amount to ineffective assistance of counsel") (collecting cases); *United States v Kissick*, 69 F.3d 1048, 1056 (10th Cir. 1995) (same) and *Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (same) and *United States v. Acklen*, 47 F.3d 739, 743 (5th Cir. 1995) (same) and *United States v. Headley*, 923 F.2d 1079, 1083-84 (3rd Cir. 1991) (same) and *Smith v. United States,* 871 F.Supp. 251, 255 (E.D. Va. 1994) (same) and *Cabello v. United States*, 884 F.Supp. 298, 302-303 (N.D. MD 1995) (same) and *Spearman v. United States,* 860 F.Supp. 1234, 1244-46 (E.D. Mich. 1994) (failure to provide grounds for potential downward departure under guidelines ineffective assistance) and *United States v. Partee,* 31 F.3d 529, 534 (7th Cir. 1994) (failure to move court for downward departure under guidelines may constitute "prejudice" under *Strickland*) and *United States v. Graham,* 884 F.Supp. 13, 14 and [n.1] (D.D.C. 1995)(same) and *Nichols v. United States,* 75 F.3d 1137 (7th Cir. 1996)(unprofessional failure to challenge relevant conduct as violative of U.S.S.G. § 1B1.3 prejudiced defendant within the meaning of *Strickland*) and *United States v. Londono,* 998 U.S. App. LEXIS 7482 (7th Cir. 1997)(unprofessional failure to challenge enhancement for "leadership role" prejudiced defendant within the meaning of Strickland).

assistance of counsel, in the prosecution of his direct appeal, *Banks v. Reynolds*, 54 F.3d 1508 (10th Cir. 1995),[16] with the caveat that "prejudice" in this type of case is limited to the "outcome" of the direct appeal. It does not require the defendant to demonstrate that he would be "successful on remand"; only that there is a *reasonable probability* that he would have had his conviction arid/or sentence vacated and/or remanded to the lower court. *United States v. Mannino*, 212 F.3d 835 (2nd Cir. 2000).

Based on the foregoing facts and law, Mr. McKinnon has affirmatively pleaded "prejudice" in his case within the meaning of *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984) and *United Stases v. Glover*, 121 S.Ct. 692 (2001); *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00); *Freeman v. Lane,* 962 F.2d 1252 (7th Cir. 1992) and *Orazio v. Dugger*, 876 F.2d 1508, 1513-14 (11th Cir. 1989).

This meritorious claim of ineffective assistance of counsel constitutes both an independent ground for relief and also constitutes "cause" allowing the Court to reach the merits of Mr. McKinnon's claim of violation of his rights under the Sixth Amendment. *Freeman v. Lane*, 962 F.2d 1252 (7th Cir. 1992) (the "failure of

---

[16] *See also United States v. Williamson,* 183 F.3d 458, 462 (5th Cir. 1999) (holding that counsel was deficient because he did not "keep abreast of legal developments related to [Petitioner's] case" which would have revealed a solid and meritorious appellate issue); *United States v. Mannino,* 212 F.3d 835; 2000 U.S. App. LEXIS 10382 (2nd Cir. 2000); *Mayo v Henderson,* 13 F.3d 528 (2nd Cir. 1994); *Freeman v. Lane,* 962 F.2d 1252 (7th Cir. 1992); *Orazio v. Dugger,* 876 F.2d 1508 (11th Cir. 1989); *Matire v. Wainwright,* 811 F.2d 1430 (11th Cir. 1987); *Grady v. Artuz,* 931 F.Supp. 1048 (S.D.N.Y. 1996); *Daniel v. Thigpen,* 742 F.Supp. 1535 (M.D. Ala. 1990)

appellate counsel to preserve on direct appeal, matters that will be deemed meritorious on collateral review constitutes cause" under the analysis of *Wainwright v. Sykes*, 433 U.S. 72, 87, 53 L.Ed 2d 594, 97 S.Ct. 2497 (1977) and *United Stases v. Frady*, 456 U.S. 152, 167-68, 170 (1982)) (*citing Orazio v. Dugger*, 876 F.2d 1508, 1513-14 (11th Cir. 1989) (same)).

**COUNSEL RENDERED INEFFECTIVE ASSISTANCE WHEN HE FAILED TO INTERVIEW WITNESS MICHELLE RESBACK WHICH WOULD CLARIFIED THAT IT WAS NOT PETITIONER'S VEHICLE THAT THREW MARIJUANA OUT OF THE VEHICLE IN THE CONSTRUCTION SITE**

Petitioner presents that counsel rendered ineffective assistance when he failed to interview witness Michelle Resback who had provided information to the DEA that would have clarified that it could not have been Petitioner's vehicle that allegedly through the bag of marijuana out of the window while fleeing law enforcement.

Witness Resback had provided information to the DEA agents when she was interviewed that clarified that she saw two vans racing through the construction zone and then saw a *small vehicle threw something out of the vehicle's window* as it drove by the area.

This is not an instance where counsel was unfamiliar with the witness's testimony. During the trial, counsel specifically inquired under redirect examination from the DEA agent whether they knew who Michelle Resback was with the following colloquy:

Q. Do you know who Michelle Resback is?

A. No.

Q.  Do you recall interviewing individuals who were making telephone calls with respect to what had occurred at the construction site just after the incident with Shawn Shepherd?

A.  Yes, I do.

Q.  Was one of those individuals Michelle Resback?

A.  Yes.  Q.  Did you speak with Michelle Resback?

A.  I did.

*Id.* Transcript, page 31, 32.

This questioning of the agent regarding witness Resback, clearly addresses that the DEA agent was aware that Ms. Resback had seen the incident and the scene and had advised the DEA that a small vehicle was the vehicle that had thrown the items outside of the vehicle during the chase that allegedly occurred in the area. Counsel had a professional obligation to question Ms. Resback and if required present Ms. Resback testimony to impeach the DEA agent's testimony that it could not have been possible that Petitioner threw the items out of the vehicle as the government presented.

A careful review of the government's discovery during the pretrial phase of this case, would have established clearly that Michelle Resback was questioned by the authorities and had actually provided contradictory information that was the main position of the government's case.

Had the accuracy of the DEA agent's testimony had been clarified before the jury, there is reasonable probability that the jury would have disregarded the testimony regarding the marijuana found on the side of the construction site.  For

21

all purposes, counsel had in his possession the testimony of Ms. Resback, who would have clarified the possibility that it was not Petitioner's vehicle that threw the drugs out of the vehicle in the construction site.

As the Supreme Court clearly outlined in *Kimmelman v. Morrison, supra,*

> "Viewing counsel's failure to conduct any discovery from his perspective at the time he decided to forego that stage of pretrial preparation and applying a 'heavy measure of deference', *ibid.,* to his judgment, we find counsel's decision unreasonable, that is, contrary to prevailing professional norms. The justification Morrison's attorney offered for his omission betray a startling ignorance of the law--or a weak attempt to shift blame for inadequate preparation. 'Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' *Id.* Respondent's lawyer neither investigated, nor made a reasonable decision not to investigate the State's case through discovery."

*Id.* Kimmelman v. Morrison, 477 U.S. at 385.

Furthermore, although failure to interview perspective witnesses is not *per se* in effective representation, *Kimmelman,* 477 U.S. at 384, where trial counsel fails to make an individualized decision and he neglected to "make reasonable investigations or to make reasonable decisions that makes particular investigations unnecessary" then effective representation is shown. *Id.* at 385; Strickland, 466 U.S. at 691.

An attorney has a responsibility to evaluate his client's case and options in the courses of legal proceedings and then advise the client's merits of each claim. *See Stano v. Dugger,* 921 F.2d 1129 (11th Cir. 1991); *Mills v. Singletary,* 63 F.3d 999 (11th Cir. 1995); *McCoy v. Wainwright,* 804 F.2d 1196 (11th Cir. 1996).

As the Supreme Court has addressed in *Wiggins v. State,* 123 S. Ct. 2357 (2003) supporting the position taken by the Court in *Strickland,* counsel has an obligation

to make certain investigations unnecessary and decisions not to investigate must be

made under reasonable circumstances:

> "Strategic choices made after thorough investigations of law in fact relevant to possible options are virtually unchallengeable; and strategic *choices made after less than completed investigation are reasonable and precisely to the extent that reasonable and professional judgment support the limitations on investigation.* In other words, counsel had a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in the circumstances, applying heavy measure or deference to counsel's judgments."

*Id. Wiggins,* quoting *Strickland* at 690-691.

Accordingly, Petitioner presents that counsel had a reasonable professional

obligation to interview the witness and make a determination whether the witness's

testimony should be presented during the trial. Had the witness's testimony been

presented during the trial, there is a reasonable probability, that the jury would

have disregarded the complete DEA statements, and a reasonable probability that

the verdict of guilty would have never been returned, as there is a reasonable doubt

as to whether petitioner was actually involved in the incident alleged in the

indictment.

**TRIAL COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO OBJECT TO AN OBVIOUS *CRAWFORD V. WASHINGTON,* 541 U.S. 36 (2004) AND APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE WHEN HE FAILED TO RAISE ON DIRECT APPEAL SUCH AN OBVIOUS CRAWFORD VIOLATION**

During the trial, counsel permitted the government to introduce the testimony

of Agent Andrasi as to the type of narcotic that was determined according to the

DEA laboratory analysis. As a threshold matter, it should be established that

Agent Andrasi, has not been established as an expert chemist either for the DEA or for any other law enforcement authority. During the presentation of the government's case in chief, the agent was allowed by the District Court to present testimony as to the contents of drugs in the laboratory reports that were returned from the Drug Enforcement Administration.

He made a determination that the drugs contained and submitted for laboratory review were *in fact controlled substances*. "The following transaction testimony was presented:

Q. I am going to now hand you what has been marked government exhibit number two and ask you if you recognize what that is?

A. Yes, it is a small amount, again, of marijuana residue, not much, couple of stems, which I removed from the suitcase and we sent to a lab to be analyzed.

Q. *And what was the lab report received from the DEA lab concerning the suspected marijuana residue in your suitcase?*

A. *Yes it was*.

Q. I am going to hand you what has been marked as government exhibit number six, and ask you if you recognize what that is?

A. It is one of our lab reports specifically concerning this exhibit.

The Court: What is the exhibit number?

The Witness: government's exhibit number two Your Honor by Ms. Fawcett:

Q. Is that the lab report that reflects that government's exhibit number two was marijuana residue?

A. It does.

Q. Did you also take custody of evidence that was turned over to West Shore Police Officer by Jack Boyer on September 25, 2003?

24

A. Yes, I did.

(*Id.* transcript at 214, 215)

The agent was allowed to introduce into evidence the laboratory reports from the Drug Enforcement Administration, that presented that the *actual substance tested by the DEA at the time, was in fact a controlled substance,* in essence marijuana. However, there was no information whatsoever presented by any chemist, or any expert from the Drug Enforcement Administration, that permitted that confrontational item, the marijuana, to be introduced into evidence. The introducing of the chemist's reports without allowing counsel to confront the accuracy of the reports or of the substance *per se* constitutes a *Crawford* violation and requiring the reversal of Petitioner's conviction.

The exhibits were not limited to the exhibits presented at this juncture. The agent also introduced the marijuana that was contained inside the suitcase under government exhibit one. Exhibit one as well as the other exhibits were submitted to the jury for their consideration.

The agent was permitted to testify that the lab reports presented from the DEA indicated the weight as well as that all the substance itself was marijuana and other narcotics. All the laboratory reports submitted for the jury's consideration were submitted without allowing Petitioner the opportunity to confront the substance in the report as either being an actual controlled substance, a counterfeit substance, or no controlled substance whatsoever. The Court permitted the

government to introduce into evidence the government's chemist's reports without consideration of the confrontational violation that was occurring.

The Confrontation Clause imposes three basic conditions on testimony offered against an accused: First, it must be given in the presence of the accused. *Coy v. Iowa,* 487 U.S. 1012, 1016 (1988). Second, the accused must have an opportunity to cross-examine the witness. *Crawford v. Washington,* 541 U.S. 36, 53-54 (2004). Third, the witness must give the testimony at trial unless she is unable to testify there. *Id.* To decide this case, then, the Court need go no further than to adopt a simple principle: A Lab Report that contains statements and conclusions that the substances were infact narcotics is testimonial within the meaning of *Crawford.*

Despite providing the above generic definition, the Crawford Court "lef[t] for another day any effort to spell out a comprehensive definition of 'testimonial.'" *Id.* at 68, 124 S.Ct. 1354. It did provide a non-comprehensive list of testimony that would be considered testimonial: testimony at a preliminary hearing, testimony in front of a grand jury or at a trial, and testimony that results from police interrogation. *Id.* 124 S.Ct. 1354

The problem arises in the instant matter, where lab report is made at the direction of the DEA for criminal prosecution in court, becomes "testimonial" when the document is admitted into evidence the party who is prepared the lab report does not testify during the trial. A Sixth Amendment violation occurs, when the individual that prepared the lab report, the "accuser" is not presented in the prosecution of Petitioner and he does not have the opportunity of cross examination.

26

### A. A Lab Report from the D.E.A. Agent Lies at the Core of the Concerns Underlying the Confrontation Clause.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." Unlike some clauses of the Constitution,[17] this one does not merely prohibit a given procedure. Rather, like the rest of the Sixth Amendment,[18] it provides an affirmative guarantee of the procedure described. Witnesses against the accused must give their testimony subject to confrontation by the accused - in his presence, subject to an opportunity for cross-examination and at trial if reasonably possible. Assuming the accused has not waived or forfeited the right; no other way of giving testimony is permissible. Thus, the Confrontation Clause would be violated if a prosecution witness's testimony according to a lab report is presented to the jury without confrontation and the accuser that prepared the report was not "available" for cross-examination. The Lab Report was prepared in this case for prosecution and to transmit material information to the prosecutor, and, if the occasion arises and he is allowed to do so, to present information about the drugs.

---

[17] *See* U.S. Const. art. I, § 9, cl. 3 (ex post facto and Bill of Attainder clauses); art. III, § 3, cl. 2; (Attainder of Treason clause); amend. V (Self-Incrimination clause); amend. VIII (prohibition of excessive bail and fines and cruel and unusual punishments).

[18] U.S. Const. amend. VI (providing that "in all criminal prosecutions, the accused shall enjoy" various rights, including, in addition to confrontation, the rights to speedy and public trial, by a jury of the district in which the crime was committed, to compulsory process and to assistance of counsel); see also art. III, § 3, cl. 1 (requiring "Testimony of two Witnesses" for proof of treason).

The Supreme Court in *Davis v. Washington*, 126 S.CT. 2266 (2006) clarified that that the Sixth Amendment confrontation clause ruling presented in the *Crawford* decision applies to statements made to law enforcement officers via an affidavit prepared at a scene.  In essence, the *Davis* decision has extended the *Crawford* opinion not only to confrontational statements, but also to *tangible items*, such as a sworn document (and in Mr. Hendricks' case a video recording) that can be authenticated by law enforcement officers should the witness become "unavailable" before trial.

In *Hammon v. Indiana*, No. 05-5705, police responded late on the night of February 26, 2003, to a "reported domestic disturbance" at the home of Hershel and Amy Hammon. *Id.* 829 N.E.2d 444, 446 (Ind. 2005). They found Amy alone on the front porch, appearing "'somewhat frightened,'" but she told them that "'nothing was the matter,'" *id.*, at 446, 447. She gave them permission to enter the house, where an officer saw "a gas heating unit in the corner of the living room" that had "flames coming out of the ... partial glass front. There were pieces of glass on the ground in front of it and there was flame emitting from the front of the heating unit." *Id.* After hearing Amy's account, the officers "had her fill out and sign a battery affidavit." *Id.*, at 18. Amy handwrote the following: "Broke our Furnace & shoved me down on the floor into the broken glass. Hit me in the chest and threw me down. Broke our lamps & phone. Tore up my van where I couldn't leave the house. Attacked my daughter." *Id.*, at 2.

The State charged Hershel with domestic battery and with violating his probation. Amy was subpoenaed, but she did not appear at his subsequent bench trial. The State called the officer who had questioned Amy, and asked him to recount what Amy told him and to authenticate the affidavit. Hershel's counsel repeatedly objected to the admission of this evidence. The trial judge found Hershel guilty on both charges, *Id.*, at 40, and the Indiana Court of Appeals affirmed in relevant part, 809 N.E.2d 945 (2004).

The Supreme Court in *Davis*, determined otherwise.   The Supreme Court determined that it is entirely clear from the circumstances that the interrogation was part of an investigation into possible ***criminal past conduct***, as indeed, the testifying officer expressly acknowledged.  The statement in the *Davis* opinion was a tangible item that was used to introduce evidence against the accused without the safeguards of the confrontation clause. The confrontation clause is violated when the accused is not able to confront the party who prepared the lab reports, or as in *Davis* wrote the affidavit.

In this case just as in *Davis* there was no emergency in progress.[19] The sole purpose of preparing the lab reports was for *future* prosecution.  In that respect, the lab reports presented at trial become, "testimonial" when it is presented to establish a fact of wrong doing at a ***"prior time."***  "The text of the Confrontation Clause reflects this focus [on testimonial hearsay].  It applies to 'witnesses' against the

---

[19] In the *Davis* case, the Supreme Court also determined that statements made to a 911 operator are not confrontational since they were provided to incidents that were occurring at that moment and thus meeting the requirements of an emergency.

accused-in other words, those who 'bear testimony.'[20] It is evident that the purpose of the lab reports were to "bear indirect testimony" against Petitioner, that the substances were infact "controlled substances."

Since the Supreme Court has left the possibility that other situations may arise that may entail the application of the confrontation clause, the Court in *Johnson v. State*, 929 So.2d 4 (Fla. App. 2 Dist.2005)[21] extended the *Crawford* position rightfully to the admittance of an FDLE Laboratory Report that was submitted to establish the "result" of a charged offense at trial.  In that case, the FDLE Report was admitted at trial to establish the results of a lab report on whether a substance was in fact a narcotic. There was no testimony from the laboratory technician on the results of the test.  The court merely accepted the lab results into evidence against the accused.  The state appellate court determined that in light of *Davis,* the FDLE Lab Report would provide indirect accusatory statement thus being confrontational hearsay.  In remanding, the State concluded the FDLE report is testimonial and subject to the confrontation clause in light of *Crawford* and *Davis.*

Accordingly, this Court must agree that the sole purpose of presenting the Lab Report establishing the drugs infact were seized from Petitioner was to establish "past events."  It is obviously a substitute for live testimony since they do precisely

---

[20]  1 N. Webster, An American Dictionary of the English Language (1828). 'Testimony,' in turn, is typically 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.' *Ibid*

[21] Although this is a State case and has no direct authority on this Court, the case is cited to show how the Supreme Court's *Crawford* decision extends to tangible items can provide indirect accusatory statements.

what a witness does on direct examination.   The use of the lab reports provides direct testimony of a "past offense" and are in direct conflict with the Supreme Court's decision in *Crawford v. Washington*, 124 S. Ct. 1353 (2004) and in *Davis v. Washington*, 126 S.CT. 2266 (2006)

Both counsel's failure to object to the admittance of the lab reports without confronting the accuracy of the substance and appellate counsel's failure to raise the issue on appeal, has caused Petitioner's Sixth Amendment Right to effective assistance of counsel to be violated.

## APPELLATE COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO PRESENT FOR APPELLATE REVIEW THE DISTRICT COURT'S VIOLATION OF PETITIONER'S EXERCISE OF HIS CONFRONTATION CLAUSE RIGHTS

During the trial, counsel attempted to show that Petitioner could not have been guilty of the conspiracy count for money laundering based on the co-conspirators' perception of the involvement in the crime, in that Petitioner had no knowledge that a crime was being committed.

Specifically, the following portions of the transcripts are to be referred by the Court by Mr. Pinsky:

> Q.  Did you ever have any conversation with any alleged drug dealer, you personally, about laundering their money through Cars on Credit?
>
> Ms. Fawcett:  I'm going to object because it is not relevant.  Whether he had a conversation, a specific conversation using the term money laundering is not relevant to any charge that is in play in this case.   It is not a legal requirement there be a conversation where money laundering is mentioned.
>
> Mr. Pinsky:  I think it's relevant in the sense, Your Honor – the Court, it's not relevant approach the bench.

The Court: A conspiracy does not need to have a verbal communication between conspirators.

Mr. Pinsky: It goes to the issue of knowledge, knowledge.

Ms. Fawcett: I'm sorry.

Mr. Pinsky: His knowledge.

The Court: Of what.

Mr. Pinsky: His knowledge that it is a transaction, he is dealing with a transaction involving proceeds from some illegal activity.

The Court: What does his knowledge of that have to do with anything?

Mr. Pinsky: Well, I don't believe that money laundering – first of all, I don't believe that money laundering is a crime that can be committed without knowledge, and I don't believe that conspiracy can exist without an intent to either do or facilitate something that someone knows about. I mean, he testified that he did not even know they were – there was money laundering going on.

The Court: He is not the one on trial here. What his knowledge is –

Mr. Pinsky: That he is an alleged co-conspirator and this goes to the existence of a conspiracy.

Ms. Fawcett: But the issue of whether or not he understood the legal definition of money laundering or the legal definition –

Mr. Pinsky: I'm not asking about a legal definition.

Ms. Fawcett: Let me finish, if I could. The legal definition of criminal conspiracy is irrelevant. Whether or not there was actual spoken conversations where they talk about the fact, we are going to engage in money laundering, is irrelevant. I think the point has already been made anyway because there have been a number of questions along these lines already. It's just irrelevant.

The Court: I'm not reversing my ruling.

Mr. Pinsky: Huh.

The Court: I'm not reversing my ruling.

Mr. Pinsky: Alright. Let me see if I can change the question.

*Id.* (Tr. 498-501).

Counsel during the time, had specifically preserved for review whether the District Court had violated Petitioner's Confrontation Clause when the District Court prohibited Petitioner from cross-examining the government witness who was a member of the conspiracy regarding his involvement in the conspiracy. The District Court's actions in not allowing Petitioner to delve into whether the co-conspirator was actually part of the conspiracy or not, deprived Petitioner of his Sixth Amendment Constitutional right to confront the accuser. These principles were annunciated by the Supreme Court in *Delaware v. Van Arsdall,* 475 U.S. 673 (1986). The Supreme Court specifically clarified:

> The confrontation clause of the Sixth Amendment guarantees the right to an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" The right of confrontation, which is secured for defendants in State as well as Federal criminal proceedings, *Pointer v. Texas,* 380 U.S. 400 (1965) "means more than being allowed to confront the witness physically." *Davis v. Alaska,* 415 U.S. at 315. Indeed, "the main and essential purpose of confrontation is to secure for the opponent the opportunity of cross examination." *Id.* at 315-316. Of particular relevance here, "we have recognized that exposure of a witness motivation in testifying is a proper and important function of the constitutionality protected right of cross examination." *See Davis* at 316-17.

*Id.* at 678-79.

Although, the court maintains wide latitude in so far as the confrontation clause is concerned to impose reasonable limits on such cross examination based on concerns about amongst other things, harassment, prejudice, confusion of the

33

issues, the witness safety, or interrogation that is repetitive or only marginally relevant, the Court must agree that in this case, the actual confrontation clause was violated and not reviewed on appeal based on counsel's errors.    None of the safeguards permitted during within the District Court's latitude as presented by the Supreme Court in *Van Arsdall*, existed in the instant case.    Counsel was merely confronting the witness to establish that under the witness's perception, being charged as a co-conspirator, he did not believe that any money laundering was actually occurring as per the charge offense.    The District Court's ruling in this case, effectively limited Petitioner's right to confront the accuser as to whether the accuser himself was part of the charged offense or not.    The trial court's decision deprived Petitioner of his right to cross-examination should be cleared by the confrontation clause.    Under the circumstances presented in this case, there is a reasonable probability that the jury might have received a significant and different impression of whether Petitioner was involved in the charged conspiracy for money laundering or not since a government, cooperating co-conspirator testified or was ready to testify, that he believed that *no money laundering was actually occurring*. Unless a reasoning of the minds can be reached in furtherance of the conspiracy itself, Petitioner cannot be involved or charged or convicted of the charged conspiracy.

In the instant matter, trial counsel specifically persevered the issue for appeal so that the Third Circuit Court of Appeals could determine whether Petitioner's confrontation clause and Sixth Amendment right to confront his accuser

was violated or not. There could be no better defense available to Petitioner than a charged co-conspirator in a money laundering transaction, testify for the government and explain to the jury that in his perception, no money laundering was occurring and no conspiracy or meeting of the minds had been reached in furtherance of the conspiracy. See also *United States v. Brodie,* 403 F.3d 123 (3rd Cir. 2005)(elements of a conspiracy "an agreement, either explicit or implicit to commit an unlawful act, combined with intent to commit the unlawful act, combined with the intent to commit the underlying offense"); *United States v. Coleman,* 811 F.2d 804 (3rd Cir. 1997)(We must, however give "close scrutiny to the sufficiency of the government's evidence in a conspiracy case, for the reasons that "slight evidence of a defendant's connection with a conspiracy is insufficient to support a guilty verdict and guilt must remain personal and individual.") See *United States v. Jonyea,* 140 F.3d 649 (6th Cir. 1998)(In a specific intent crime, such a conspiracy to money launder, "defendant must act with the purpose of violating the law."); *United States v. Phillips,* 19 F.2d 1565 (11th Cir. 1994)(in a general intent crime, the defendant need only intend to do the illegal act.); *United States v. Galvan,* 693 F.2d 417 (5th Cir. 1993)(the government may not prove knowledge and participation in a criminal conspiracy merely by presenting evidence placing a defendant in a climate of activity that reeks of something foul); *United States v. Samuels,* 714 F.2d 57 (3rd Cir. 1984).

Accordingly, this Court must agree that counsel's failure to present such an obvious issue on direct appeal renders counsel's action ineffective in violation of Petitioner's Sixth Amendment right to effective assistance of counsel.

## APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE WHEN HE FAILED TO ADVISE THE COURT OF THE SUPREME COURT'S DECISION IN *UNITED STATES V. SANTOS,* 2008 US LEXIS 4699 (JUNE 2, 2008 THAT TOOK HIS ACTIONS OUT OF THE REACH OF THE GOVERNEMENT'S PROSECUTION

Petitioner presents that appellate counsel rendered ineffective assistance when he failed to advise the District Courts of the Supreme Court's precedent decision in *United States v. Santos,* 2008 US Lexis 4699 (June 2, 2008) and *United States v. Cuellar,* 2008 US Lexis 4698 (June 2, 2008). The *Santos* case involved in the interpretation of the word "proceeds" in federal money laundering statute in violation of Title 18 U.S.C. Section 1956. The *Cuellar* case the Court clarified the purpose that the government was required to prove that the purpose of transactions were to conceive and disguise the laundered funds.

In Petitioner's case, there was no purpose to conceal the disguise of the vehicles to allege drug use. Testimony from multiple Petitioners' co-defendants, and other witnesses clearly clarified this. Shepherd himself testified that he never sought to launder anyone's money. (See Tr. Pg. 497 and 502)

During the trial, this Court specifically clarified in the post trial memorandum that "in the present case there was no evidence presented at trial that McKinnon, Shepherd, or Smith Car Deals facilitated actual or potential transaction. Granted, multiple drug dealers testified that they used the cars in transporting drugs, but

36

the evidence did not demonstrate that they sold cars for the purpose of selling drugs." The record and evidence did not show an agreement to provide transportation to alleged drug dealers for the purpose of distributing or possessing marijuana, cocaine, or cocaine base. Furthermore, the Judge clarified that McKinnon, Shepherd and Smith sold cars for reasons that had nothing to do with the sales of drugs.

All of the alleged money laundering transaction that the government presented consisted of used vehicles sold at market rate. There was no evidence of secret meetings to transfer large sums of cash, the use of code and language, or the scrupulous avoidance of paper trail. There was no evidence presented that could have made difficult to determine who actually owned or controlled the vehicles in question. In fact, several vehicles were confiscated from the alleged drug dealers by the government because they were driven the vehicles around and yet the government attempted to suggest during the trial that these individuals were trying to conceal their identity from the vehicles in question or purchase that vehicle. The Supreme Court' decision in *Santos,* was designed to punish drug dealers who thereafter take the additional steps of attempting to legitimize the proceeds so that the observers think the money arrived from legal enterprises. Every alleged drug dealer in Petitioner's case is far stretched from that definition. The alleged drug dealers in Petitioner case bought high mile, used vehicles strictly for personal benefit, and drove these vehicles around daily.

Based on the Supreme Court decision in *Santos,* and in *Cuellar,* counsel had an obligation to raise before the Appellate Court the fact that none of the alleged money laundering transactions could have been supported since the government was not able to prove according to Cuellar, that any of the vehicle transactions involved the concealment of the disguise of laundered funds.

Accordingly, this Court must agree that appellate counsel's failure to properly raise on appeal an issue which would have caused the Court to reverse petitioner's conviction, renders counsel's action to fall in direct violation of petitioner's Sixth Amendment constitutional right of ineffective assistance of counsel.

## TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO INVOKE THE SEQUESTRATION RULE OF THE WITNESSES TESTIMONY TO AVOID COLLUSION AS OCCURRED IN PETITIONER'S TRIAL

During the trial, Petitioner receives information from James Blackwell, another inmate being held at the federal institution, that he observed witnesses Kevin Hunter, Baron McKinney, Marcel Brown, Richard Roberson, and Ray Jones discussing how to make their testimony more believable and how to make Petitioner seem like a kingpin. (See Appendix Sworn Affidavit) Counsel was made aware of this fact and advised the Court that he thought he filed a sequestration order in order to maintain the witnesses separated during the trial so that they could not coordinate their testimony.   However, counsel failed to review the record to determine whether a sequestration order was actually issued, and in fact failed to request a sequestration order in this case.   In fact, counsel did not request the witnesses be sequestered in this case.

The Courts have clearly determined that the purpose of sequestration is to discourage and expose fabrication, inaccuracy, and to prevent collusion amounts the witnesses. *See United States v. Rhynes*, 218 F.3d 310 (4th Cir. 2000)(we have properly recognized that the purpose and spirit *witness sequestration* is to discourage, inaccuracy and collusion amongst the witnesses); *Geders v. United States*, 425 USA (1976)(the Supreme Court observed this practice, which goes back to "our inherence of the common Germanic law" serves two purposes, its exercises and restraint on witnesses tailoring their testimony to that of each witnesses, and directing testimony that is less than candid); *LaPenna v. Up John Company,* 665 F. Supp.2d 412 (3rd Dist. 1997); *United States v. Farnhan*, 791 F.2d 331 (4th Cir. 1996)(because of its important role in reaching the truth Rule 615 provides a presumption favoring sequestration)

In fact, appellate counsel had a professional obligation to realize that a sequestration order was violated and present the issue on appeal for appellate review. *See Jones v. United States,* 252 F. Supp. 781 (W.D. Okla. 1966)(complaint that prosecution witness sat in Court during trial and also testified as government witness was not error as a matter of law, but if erred, could not be reached by motion to vacate sentence but only on appeal). In essence, appellate counsel's failure to raise the sequestration order review for an abuse of discretion under the District Court's position has not only violated Petitioner's right to effective assistance of trial counsel for counsel's failure to request the sequestration, but also

based on Appellate counsel error in his failure to raise the issue for appellate review.

Accordingly, this Court must agree that a minimum an evidentiary must be granted to determine the extent of collusion amongst the Government witnesses during the trial that severely prejudiced Petitioner's opportunity at a fair and just trial.

**PETITIONER'S SENTENCE IS VIOLATIVE OF THE THIRD CIRCUIT'S DECISION IN UNITED STATES V. WHITLEY, 529 F.3D 150 (2ND CIR. 2008); ABBOTT V. UNITED STATES, 574 F.3D 203 (3RD CIR. 2009) AND GOULD V. UNITED STATES, 329 F. APPX. 569 (5TH CIR. 2009)**

The Supreme Court has recently granted Writ of Certiorari in a consolidated cases of *Abbott* and *Gould,* where the Court will determine whether 924(c)(1)(A) prefatory phrase "except to the extent that is greater minimum sentence is otherwise provided by this section or by any other provision of law" encompasses the underlying drug trafficking offense or crime of violence, and if not, whether it includes another offense for possessing the firearm in the same transaction. As this Court may recall, petitioner is serving a consecutive term of incarceration as a result of the Title 28 U.S.C. § 924(c) conviction. The Second Circuit in United States v. Whitley, 529 F.3d 150 (2nd Cir. 2008) took the position that a "consecutive sentence mandated under Title 18 U.S.C. § 924(c) does not apply to defendants subject to higher mandatory minimum sentences.

The Supreme Court will clarify whether the defendant can be sentenced to a mandatory consecutive sentence on the 924(c)(1)(A) despite also being the subject to a greater mandatory minimum for the underlying drug trafficking crime.[22]

Petitioner respectfully prays that this Honorable Court hold this issue of the Title 28 U.S.C. § 2255 in abeyance pending resolution of the Supreme Court's consolidated Writ that was granted in *Gould* and *Abbott*. Should the Supreme Court determine that the except clause of § 924(c) statutory interpretation cannot be applied as written, Petitioner respectfully prays that the § 924(c) conviction that his is serving be vacated and at a minimum be imposed concurrent to the original minimum mandatory sentence.

## APPELLATE COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO PRESENT FOR APPELLATE REVIEW THE SUFFICIENCY OF THE EVIDENCE OF TRIAL TO SUPPORT THE JURY'S FINDING THAT THE SUBSTANCE POSSESSED BY PETITIONER WAS "COCAINE BASE"

Petitioner presents, that trial counsel was ineffective when he failed to present on appellate review the sufficiency of the evidence to make a determination whether Petitioner knew that the substance he allegedly possessed was actually "crack cocaine or cocaine base." In the present case, there was no crack cocaine, cocaine base, pot or cocaine or residue of either ceased or detected. (See Tr. Index to government's exhibits pages 6-18). The DEA agents testified extensively that there was no testimony concerning any knowledge of any cocaine base sales or possession.

---

[22] Petitioner understands that the Supreme Court denied Writ of Certiorari in this matter when the same was raised before the Supreme Court, however it is positioned that the reason that the Writ of Certiorari was not granted was based on the Third Circuit's failure to address the matter.

(See Tr. of Agent Cunney, pages 21-35, 970, 989; Agent Andrasi, pages 44-61; Agent Kierkowski, pages 62-79; Agent Kegerreis, pages 1013, 1058, 1141). Furthermore, there was no testimony by Agent Cunney that Petitioner destroyed any narcotics whatsoever. Further testifying that there was no residue found in any sink, toilet, or trashcan in the area that was searched pertaining to Petitioner. (Pages 985-986)

Further and most importantly, there were no lab reports that any of these substances that Petitioner possessed was actually cocaine base. (Trial Index to Exhibits, Pages 6-18) There were no color caps, plastic viles, cutting agents, baking soda, razor blades, drug cooking utensils, pots, pans, jars, baggies or any other items that the government relies on under the position that Petitioner was involved in the used distribution or manufacturer of cocaine base. Although several search warrants were served including the ones at the residences of Jennifer Robinson and Petitioner's sister's residence, none of the search warrants were able to reveal any item involved to Petitioner and cocaine base nor was there any cocaine base detected. In fact, none of the money that was confiscated from Petitioner contained any cocaine base residue.

Ironically, although the government presented evidence that a scale was confiscated from Petitioner's residence, Agent Andrasi testified that the scale could be used for food preparation and it was found in the kitchen where no residue on the scale from cocaine or any other narcotic was located. (Tr. 224) Although the DEA also conducted extensive surveillance in Petitioner's residence, there was no

testimony from any of the agents that cocaine base or cocaine transactions were ever observed. (Tr. pg. 998)

Although the prosecution may "establish the identity of the drug to as circumstantial evidence" so long as the government produces _sufficient evidence,_ direct or circumstantial for which the jury is able to identify the substance beyond a reasonable doubt. See *Griffin v. Spratt,* 969 F.2d 16 (3rd Cir. 1992). The jury's determination of drug identity was based on unpersuasive, controverted, conflicting, and impeaching testimony from government witnesses. Ironically, government informant Shepherd testified that he never saw Petitioner sell any cocaine or crack. (Tr. pg. 485)  Further testifying that he never dealt with any drug except marijuana. (Tr. pg. 477)

Government informant McKinnley testified that he initially bought cocaine base from McKinnon after he was directed to contact McKinnon for cocaine base by informant Ray Jones. (Tr. pg. 864) However, Jones testified that McKinney worked for him and McKinney corroborated this testimony. (Tr. 8 at 53) Further testifying that McKinney and Jones' testimony established that all the cocaine base found in McKinney's home when he was arrested was supplied by his drug supplier Jones. (Tr. pg. 857)

Informant Hunt testified that Shepherd was present twice during drug transactions. (TR 923, 94)  He further stated that Jennifer Cassell was present during crack and marijuana transactions. (TR 925) This testimony is contradicted by other government informant's testimony.  Specifically, Shepherd testified he

never witnessed any drug transactions between McKinnon and anyone. (TR 484) Further testifying that he never witnessed McKinnon sell cocaine or crack to anybody. (TR 485)  Ironically, Jennifer Cassell's testimony established that she never saw McKinnon with cocaine or any other controlled substance other than marijuana. (TR 160)

Informant Richard Roberson testified that informant Ray Jones was present during the drug transaction where he bought large quantities of marijuana and had conversation with McKinnon pertaining to the purchase of crack cocaine. (TR 947) However, there is no testimony from Ray Jones that he was ever present during any meetings between Roberson and Petitioner let alone a drug transaction. (TR 829-858)  Further Jones testified that he has never seen McKinnon with any large amounts of marijuana and he has never seen McKinnon with crack cocaine or powder cocaine at all. (TR 856) The government will bring you forward information after informant had ample opportunity to corroborate several statements made by informants with testimony of other informants.  The government failed to clear up these contradicting, conflicting, and controverted statements of several of their informants.  The Supreme Court has suggested that reviewing Court should accept a charge as filing based on creditability determination if the witness has not told a "coherent and plausible story" or if the story is "contradicted by extrinsic evidence." *See Anderson,* 470 U.S. at 575; *Riley v. Taylor,* 277 F.3d 261 (3rd Cir. 2001).  Also, witness creditability can be revisited if the testimony is "incredible as a matter of

law." See *United States v. Calderone,* 127 F.3d 1314 (11th Cir. 1997); *United States v. Property Located at 15 Black Ledge Drive,* 897 F.2d 97 (2nd Cir. 1990).

In the instant case, the government had an ample opportunity to test for cocaine base residue at every location connected to Petitioner. The government failed to present any documentation, pictures, residue, or any other substance whatsoever that would have linked Petitioner to actual cocaine base and not a counterfeit or non controlled substance.

Appellate counsel had an obligation to present the sufficiency of the evidence on the conflictive nature of the statements presented during the trial for the Third Circuit's review and obvious vacature of the conviction.

## TRIAL COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO OBJECT TO THE DISTRICT COURTS APPLYING OF THE OBSTRUCTION OF JUSTICE ENHANCEMENT UNDER THE SENTENCING GUIDELINES

Petitioner presents that counsel was ineffective when he failed to present an objection to the obstruction of justice enhancement to the Federal Sentencing Guidelines as presented in the instant case. Counsel had a professional obligation to object to the improper application of United States Sentencing Guidelines § 3C1.1 when it is obvious that the evidence presented during the trial did not support the enhancement as presented.

Under the Sentencing Guidelines, if Petitioner willfully obstructs or impeded or attempted to obstruct or impede the administration of justice during the course of the investigation, prosecution or sentencing of the instant offense of conviction and the obstructive conduct related to the defendant's offense of conviction or any

relevant conduct, or a closer knit offense, the increase of the offense by two levels is appropriate. However, the Sentencing Guidelines Section 3C1.1 of the application explains that the adjustment applies to "threatening, intimidating, or otherwise unlawful influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." The Courts have been advised that they are required to follow the application notes of the Federal Sentencing Guidelines in imposing sentences for federal offenses. *See Stinson v. United States,* 508 US 36 (1993); *United States v. Figueroa,* 105 F.3d 874 (3rd Cir. 1997).

In the present case, the government proves no letter was allegedly written by Petitioner or his alleged cellmate whom they allegedly have no name for the inmate. (See Transcript index to exhibits for Government at 16-18) There is no substantial evidence that Petitioner authored any of the letters at all. (Tr. pg. 295, 306; McKinney's Page 887, 888) There has been evidence presented however, that Petitioner's alleged cell mate was the author of the actual letter. However, what is missing is any testimony from the alleged cellmate or any government informant that Petitioner instructed his cellmate to author the letter or deliver to McKinney the letter for his signature.

The trial testimony does not support either directly or indirectly that any problems occurred or would have occurred between government informant McKinney and Petitioner. In fact while testifying informant McKinney never once stated that he was influenced, intimidated, threatened, or perceived to have any problems or incidents with Petitioner in any way. (Tr. pgs 861-891) The

government informant Grayson testified that he never actually saw the alleged letter and that Petitioner never described the letter.  (See Grayson Tr. pg. 295) There is no testimony from any government informant or any witnesses that ever explained or presented that petitioner gave the alleged letter to anyone to pass on to government witness McKinney for his signature.

Accordingly, this Court must agree that the lack of evidence that Petitioner was actually involved in the preparation or presenting of the alleged letter for McKinney's signature warrants a reversal of the sentence and a vacatur of the enhancement pursuant to the Guideline § 3C1.1.

**APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO ARGUE ON APPEAL THAT COUNT IV OF THE INDICTMENT WAS INSUFFICIENT IN FAILING TO CHARGE PETITIONER WITH A CRIMINAL OFFENSE**

Petitioner presents that counsel was ineffective when he failed to present for the Third Circuit's review whether the indictment in Count IV of the charged document failed to establish that Petitioner was actually involved in the criminal offense.  Counsel had an obligation to present for appellate review all issues of merit which would have resulted in the vacatur of the charged offense for that count.

The indictment suffers from a jurisdictional defect when a charge is no crime at all.  *See United States v. Peter*, 310 F.3d 503 (5th Cir. 1990).  The District Court lacks jurisdiction when an amendment alleges only a non-offense, or rather, when the government alleges a specific course of conduct outside the reach of the applicable statute.  In such instances, a defendant's "innocence of the charged

offense appeals from the very allegations made in the indictment." See *Peter*, 310 F.3d at 715.

Petitioner was only able to challenge the indictment for failure to charge an offense during his direct appeal. See *United States v. Cefaratti*, 221 F.3d 502 (3rd Cir. 2000). As the Third Circuit explained, the indictment does not state in offense if the facts it alleges, fall beyond the scope of relevant criminal statute, as a matter of statutory interpretation. *See United States v. Vitillo*, 2005 US Dist. Lexis 145701 (3rd Cir. 2005)

Specifically in the instant matter, Count IV in the indictment charged in pertinent part that Petitioner "and others known and unknown to the grand jury, aided and abetted each other, did possess, use, carry and brandish firearms in furtherance of the drug trafficking crimes." The two sets of verbs cannot be mixed and still be construed to charge an offense under federal law. See *United States v. Combs,* 369 F.3d 925 (6th Cir. 2004). The Third Circuit has held that when an indictment applies the wrong standard of participation and charges a person with "possessing a firearm during and relation to a drug trafficking crime, the indictment fails to charge any co-defied federal crime." *See Combs*, at 934. See also *United States v. Saviores,* 430 F.3d 376 (6th Cir. 2005) The Court states that by authorizing the conviction for a non-existing offense, it would affect the defendant's substantial rights and the possibility of such an outcome would undermine the defendants of the trial. Title 18 U.S.C. § 924(c)(1)(a) statute does not simply list the prohibited activity – using, carrying, or possessing a firearm. Rather, it separates the "uses

and carries" provision from the "possess" provision, placing each within its own clause separated by disjunctive, "or." As a matter of grammatical construction, the use of disjunctive indicates that Congress was adding two separate acts. See *Combs,* at 931 "the two prongs of the statute are separated by disjunctive "or" which according to the precepts of statutory construction, suggest that separate prongs must have separate meanings." *See also United States v. Pleasant,* 125 F. Supp. 2d 173 (E.D. Va. 2000)("The use of second dependent clauses and the choice of different modifiers for the prohibited conduct confirm the second prohibited act is quite distinct from the first.") The Court in *Combs* concluded that the language "in furtherance of" requires a slightly higher standard of participation than the language "during and relation to." *Combs* at 930-33; *United States v. Caballos-Torres,* 218 F.3d 409 (5th Cir. 2000). See also *United States v. Gamboa,* 439 F.3d 796 (8th Cir. 2006).

Petitioner presents that counsel had an obligation to present an appeal that he could not have been convicted of possessing a firearm in relation of the drug trafficking crime, because the indictment improperly mixed elements of two separate offenses prescribed in Title 18 U.S.C. § 924(c)(1)(a) and such confusion in the charging incident results in an indictment that fails to charge any offense whatsoever.

Accordingly, this Court must agree that appellate counsel rendered ineffective assistance when he failed to present an obvious failure of the indictment to charge a

violation in Count IV which would have required the vacating of Petitioner's conviction on this charged count.

**APPELLATE COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO PRESENT FOR REVIEW THAT THE DISTRICT COURT HAD COMMITTED REVERSIBLE ERROR WHEN IT REFUSED TO DISMISS JUROR GARGIULO FROM THE JURY AFTER IT WAS LEARNED THAT HE FAILED TO DISCLOSE DURING VOIR DIRE THAT HE KNEW SCOTT THOMAS**

Petitioner presents that appellate counsel rendered ineffective assistance when he failed to present for appellate review a properly preserved issue during the motion for judgment of acquittal when it was determined that one of the jurors failed to present during voir dire that they actually knew one of the prosecution witnesses.

During the trial, prosecution witness Scott Thomas told the Government that he knew juror Gargiulo.  The juror never delved that information during voir dire to the Court.  Mr. Gargiulo did admit during voir dire that he knows Troy Ross whom he indicated might have been a witness.  Mr. Gargiulo stated during the voir dire that Mr. Ross filled out an employee application with his company.  Mr. Gargiulo interviewed Mr. Ross and offered him a job but Mr. Ross never took the position. (Tr. Pg. 452-53).  Petitioner during the trial moved to strike the juror.  (Tr. pg.452-56)  The Court denied the motion to strike although it was obvious that Petitioner was denied his due process when the Court denied the obvious juror motion.  This issue was ripe for appellate consideration.

It is now due process of law for a juror to fail to disclose in *voir dire* any information that might cause a defendant to seek that juror's disclosure from the

jury either by a challenge for cause or by a proper challenge. See *United States v. McKorkle,* 248 F.2d 1 (3rd Cir. 1957)(juror was victim of a robbery); *United States v. Vento,* 533 F.2d 838 (3rd Cir. 1976)(juror failed to disclose their financial relationship to a victim of a crime and to a police officer.) The difference between the *Vento* case and the Petitioner's case was that in the *Vento* case the jury did not participate in deliberations therefore the Court did not determine any prejudice whatsoever in that case. However, in Petitioner's case, Mr. Gargiulo was not an alternate and did participate in the jury deliberations possibly influencing the jury's final decision. Not only did Mr. Gargiulo deliberate during the trial, it was determined during the trial that the extent of the knowledge between Mr. Gargiulo and Mr. Thomas was rather detailed.

Mr. Gargiulo had an established business relationship with witness Thomas. Witness Thomas may have referred Troy Ross to Mr. Gargiulo for a job. (Tr. 450-53) Troy Ross was the manager of Speed of Sound that sells stereo equipment and Mr. Gargiulo manages a store that sells stereo equipment. (Tr. 450)

Based on Mr. Gargiulo's relationship with Scott Thomas and the fact that Scott Thomas may have referred Troy Ross to Mr. Gargiulo for employment, petitioner would have asked that Gargiulo be moved during jury selection. Mr. Gargiulo had too much of a connection with Scott Thomas and Speed of Sound for Petitioner to have been comfortable using him during the jury. The issue was properly preserved by trial counsel during the judgment of acquittal Rule 29 motion in the District Court. The improprieties of the jurors sitting during the deliberations and knowing

the personal involvement of prior government witnesses presented during the trial, was a direct obvious issue to present on appeal for appellate consideration.

This Court must agree that appellate counsel's failure to present a properly preserved juror issue on direct appeal renders counsel's performance ineffective as a matter of law requiring an evidentiary hearing to address the raised violation.

## COUNSEL PROVIDED INEFFECTIVE ASSISTANCE WHICH RESULTED IN A SIXTH AMENDMENT VIOLATION WHEN HE FAILED TO CONTEST THE AMOUNT OF DRUGS ATTRIBUTED TO PETITIONER ABSENT ANY RELIABLE SOURCES ALLEGED IN THE PSI REPORT

Petitioner provides that her trial attorney rendered ineffective assistance when he failed to contest the charged drug quantities absent any reliable sources.

The District Court, summarily accepted the information provided in the PSI Report and failed to make any individualized findings that the alleged drug quantities where *actually* possessed or distributed by Petitioner or any other person in the charged conspiracy. Even though the PSR's finding on the quantity of drugs for which Petitioner was accountable amounted only to "conclusory statements," *United States v. Becerra*, 992 F.2d 960, 966 (9th Cir. 1993), the district court simply adopted the "facts as set forth in the [PSR], as to the accountability of each defendant for the total quantity of drugs ... that were present," and on that basis accepted the PSR's calculation of the base offense level. By doing so, the district court erred. For, while "the sentencing court may adopt the factual findings of the presentence report," a district court "may not adopt ... conclusory statements unsupported by the facts or the Guidelines." *Becerra*, 992 F.2d at 966; *accord United States v. Navarro*, 979 F.2d 786, 788 (9th Cir. 1992)

It is clear from the records of this case that there was an extensive amount of drugs attributed to Petitioner that could not be supported.    Counsel    had    an obligation to advise the Court that the attributed drug quantities were unreliable and could not be used to Petitioner's guideline range. *See United States v. Terry,* 916 F.2d 157, 160 (4th Cir. 1990). The *Terry* court held that the presentence report may form the basis for the factual findings by the district court on disputed factual issues unless the defendant shows "that the information in the presentence report is unreliable, and articulate[s] the reasons why the facts contained therein are untrue or inaccurate." *Id.* 916 F.2d at 162 "The burden is on the defendant to show the inaccuracy or unreliability of the presentence report." *Id.* When an attorney fails to properly object and/or place the Court on notice of a challenge to an alleged drug amount that will enhance the final sentence, that attorney has rendered ineffective assistance.

Accordingly, this Court must agree that Petitioner has made a showing sufficient to sustain his burden under *Terry.* Because the presentence report lacked "sufficient indicia of reliability to support its probable accuracy," U.S.S.G. § 6A1.3(a), acceptance of its conclusions by the district court has amounted to an abuse of discretion. *See Terry*, 916 F.2d at 160

Wherefore, Petitioner respectfully prays this Honorable Court vacate his sentence and/or in the alternate grant an evidentiary hearing where the conclusory statements attributing drug quantities to Petitioner's sentence can be properly resolved on the record.

**COUNSEL WAS INEFFECTIVE AND APPELALTE COUNSEL INEFFECTIVE FOR NOT RAISING THE ISSUE ON APPEAL WHEN THEY FAILED TO OBJECT TO THE IMPROPER RECKLESS ENDANGERMENT ENHANCEMENT PETITIONER RECEIVED DURING SENTENCING**

Petitioner presents that counsel was ineffective when he failed to object to the reckless endangerment enhancement he received when the Court failed to establish under any standard that Petitioner knew that he was being pursued by law enforcement.   Knowledge that the individual is a law enforcement officer is the main requirement that must be established for the enhancement to apply.   The attorneys were ineffective for failing to object to this enhance since Petitioner cannot be enhanced if he does not know that the individual is a law enforcement officer or that the law enforcement officer was attempting to arrest him.  *See United States v. Hayes,* 49 F.3d 178 (6th Cir. 1995); *United States v. Hazelwood,* 398 F.3d 792 (6th Cir. 2005); *United States v. Wilson,* 392 F.3d 1243 (11th Cir. 2004); *United States v. Bentley,* 99 Fed. Appx. 426 (3rd Cir. 2004)

For the enhancement to apply, there must be a nexus to the crime and the charged offense and the reckless endangerment during the flight from law enforcement. There was just no relationship to the charged offense and the enhancement to justify the enhancement.   There was no proof presented that Petitioner knew the individuals were law enforcement officers at the time of the alleged pursuit.   There was just insufficient nexus to support the enhancement under any standard of review during the sentencing hearing.

Accordingly, this Court must agree that counsel rendered ineffective assistance when he failed not only to address the matter during the sentencing and during

direct appeal.  An evidentiary hearing is required to address the matter on the record based on counsel's actions.

## THE CUMULATIVE IMPACT OF TRIAL COUNSELS ERRORS ADDRESSED HEREIN REQUIRE RESENTENCING AND/OR IN THE ALTERNATE AN EVIDENTIARY HEARING

Petitioner contends that each of the errors addressed herein was sufficiently prejudicial to require a reversal of his sentence.  However, should the court disagree, then the cumulative effect of these errors deprived Petitioner of fair and just assistance of counsel. "Individual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect ... so as to deny due process." *United States v. Fernandez,* 145 F.3d 59, 66 (1st Cir. 1998) *See, e.g., United States v Hands,* 184 F.3d 1322, 1334 (11th Cir. 1999); *United States v. Munoz,* 150 F.3d 401, 418 (5th Cir. 1998), *cert. denied,* 525 U.S. 1112 (1999).

The errors here were many, they were all interrelated and their cumulative impact was devastating Petitioner's right to due process and a clear violation of his Sixth Amendment right to effective assistance of counsel.

Wherefore, Petitioner respectfully prays this Honorable Court vacate his conviction and sentence due to the cumulative effects of counsel's errors.  In the alternate, Petitioner requests that an evidentiary hearing be granted to allow Petitioner and opportunity to address the facts of the issues raised and further develop the record.

**AN EVIDENTIARY HEARING IS NECESSARY AND WOULD BE USEFUL TO THE COURT**

Title 28, United States Code, Section 2255 provides that a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released or for reduction of sentence may move the court which imposed the sentence to vacate, set aside or correct the sentence. This section also provides as follows:

> "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

*Id.* Title 28 U.S.C. § 2255

In the instant case as set forth in the Statement of Claim of the § 2255 motion, and the foregoing arguments, Mr. McKinnon has pleaded, presented evidence, and argued the applicable law to demonstrate that his conviction and/or sentence is violative of his Sixth Amendment right to effective assistance of counsel in the pre-trial process. Mr. McKinnon has also pleaded, presented evidence, and argued the applicable law to demonstrate that his conviction and/or sentence is violative of his Sixth Amendment right to effective representation by counsel in the sentencing and appellate phases.

While many of the allegations are already well established by the files and records of this case, many of the material allegations concern events which took place outside the courtroom and are not, therefore, part of the "files and records". These allegations require an evidentiary hearing under well-settled law. *United*

*States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994)(evidentiary hearing required unless § 2255 motion, files, and trial record "conclusively show" petitioner entitled to no relief); *Virgin Islands v. Weatherwax*, 20 F.3d 572, 573 (3rd Cir. 1994)(petitioner entitled to evidentiary hearing on ineffective assistance of counsel claim where facts viewed in light most favorable to petitioner would entitle him to relief*); Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994) (same); *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir 1994) (same); *Nichols v. United States*, 75 F.3d 1137, 1145-46 (7th Cir. 1996) (petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel when record inconclusive on issue); *United States v. Witherspoon*, 231 F.3d 923 (7th Cir. 2000).

Based on all of the foregoing, Mr. McKinnon respectfully requests this Honorable Court to **ORDER** an evidentiary hearing where he can prove his case.

## CONCLUSION

**WHEREFORE** MOVANT Mr. McKinnon respectfully asks this Honorable Court to: (A) **ORDER** an evidentiary hearing as set forth in his § 2255 motion; and, upon proof of his allegations herein, **ORDER** that Mr. McKinnon's conviction and/or sentence be **VACATED**.

Done this _____, day of June 2010

Respectfully submitted,

_____
Michael McKinnon
Reg. # 27735-083
MCFP Springfield
Medical Center/Federal Prisoners
P.O. Box 4000
Springfield, MO  65801

## AFFIDAVIT OF JAMES BLACKWELL

1.    I am James Blackwell register number 12223-067.

2.    I was at the Federal Courthouse in Harrisburg, PA on the day Michael McKinnon was there going to trial in 2004.

3.    I was locked in the holding cell in the Federal building next to Government witnesses, Kenneth Hunter AKA "Finesse", Baron Mckinney AKA "Lil B", Marcel Brown AKA "Wop", Richard Roberson AKA "Rick Ro", and Ray Jones AKA "Dog". I know of these individuals through the streets and county jails.

4.    I witnessed discussions between the government informants, they were discussing how to make their testimony more believable and how to make Mike Mckinnon seem like a king pin, or a big name in the drug business. They all had a part to say in each others testimony.

5.    I witnessed Marcel Brown tell Baron Mckinney, Kenneth Hunter, and Richard Roberson they all have to make it seem like they were buying large quantities of cocaine from Mike Mckinnon.

6.    I witnessed baron Mckinney say he was going to testify how Mike Mckinnon used to give him nine (9) ounces of cocaine whenever he needed it, and this was agreed upon by the other informants in the holding cell.

7.    I witnessed Kenneth Hunter say he was going to testify that Mike Mckinnon sold him a half kilo to a kilo of cocaine every week or two, and this was agreed upon by the other individuals in the cell.

8.    All of the informants were going over what they were going to say and making sure that each one did not forget to say certain statements.

9.    Every time one witness would go down to the courtroom to testify on Mike Mckinnon, as soon as he returned he would brief the other witnesses on what he said and what questions were asked of him, and whether or not he felt the judge and jury believed him or not.

10.    I told all of the foregoing statements to Mike Mckinnon as soon as we returned to Cumberland County Prison from the Federal Courthouse in Harrisburg, PA.

11.    Mike Mckinnon must have told his lawyer, and his lawyer must have contacted the prosecuting attorney about the statements of what I witnessed, because shortly after telling Mike what I witnessed at the Federal Courthouse, I was visited by the prosecuting attorney and an agent from the Drug Enforcement Administration. Without directly saying it they threatened my plea agreement if I got involved in Mike Mckinnon's trial. I definitely felt they were threatening me.

12.    I am willing to testify in any court forum in support of the foregoing statements (1-13) included in this affidavit.

13.    If questioned by Mike Mckinnon's trial attorney or called to testify at Mike Mckinnon's trial I would have attested to the foregoing facts.

_James Blackwell_
James Blackwell

Subscribed and sworn to before me, a Notary Public, on this _10th_ day of _October_ 2007, who's identity is well known or proved to me, signed and sealed the foregoing affidavit, and acknowledged the same to be his free act and deed.

Notary Public_____
My Commission Expires_____

10/2/07

_____, CASE MANAGER
AUTHORIZED BY THE ACT OF JULY 7, 1955, AS AMENDED TO ADMINISTER OATHS (18 USC 4004).