IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:CR-03-251-05** |
| | : | |
| **v.** | : | |
| | : | |
| **MICHAEL MCKINNON** | : | |

## M E M O R A N D U M

**I.**        <u>**Introduction**</u>

        Before the court is Michael McKinnon's motion filed pursuant to 28
U.S.C. § 2255 to vacate judgment.  McKinnon seeks relief on the basis of claims of
ineffective assistance of trial and appellate counsel and alleged errors by the trial
court as follows:

        1)  Trial counsel rendered ineffective assistance by allegedly failing to
interview Michelle Resback;

        2)  Trial counsel rendered ineffective assistance by not objecting on
Confrontation Clause grounds to the admission of the marijuana laboratory results
where there was no reason to believe the laboratory analysis was faulty or the
Government could not produce the analyst;

        3)  Appellate counsel rendered ineffective assistance by not asserting, as
a separate Confrontation Clause violation, that the court erred by limiting trial
counsel's cross-examination of a coconspirator Government witness regarding his
and Defendant's understanding of the legal definition of money laundering;

        4) Appellate counsel rendered ineffective assistance by purportedly
declining to attack the money laundering conspiracy conviction on the grounds

articulated in *United States v. Santos*, 553 U.S. 507 (2008) and *Cuellar v. United States*, 553 U.S. 550 (2008);

5) Trial counsel rendered ineffective assistance by apparently not moving to sequester witnesses;

6) Defendant's consecutive mandatory sentence for the 18 U.S.C. § 924(c) violation was improper under *Abbott v. United States*, 131 S. Ct. 18 (2010), which affirmed the Third Circuit's decision in *United States v. Abbott*, 574 F.3d 203 (3d Cir. 2009);

7) Appellate counsel rendered ineffective assistance by not challenging the sufficiency of the evidence to support Defendant's conviction for distribution of crack cocaine;

8) Trial counsel rendered ineffective assistance by not objecting to the obstruction of justice enhancement to his guidelines offense level.

9) Appellate counsel rendered ineffective assistance by not asserting on appeal that Count 4 of the indictment failed to charge an offense against the United States;

10) Appellate counsel rendered ineffective assistance by not asserting on appeal that this court erred by not dismissing juror Gargiulo based on his acquaintance with Scott Thomas;

11) Trial counsel rendered ineffective assistance by not contesting the drug quantity determination in the presentence report;

12) Trial counsel and appellate counsel rendered ineffective assistance by not contesting the presentence report's enhancement of Defendant's offense level for reckless endangerment while fleeing law enforcement; and

2

13) Trial counsel and appellate counsel committed errors whose effect, individually or cumulatively, would require resentencing.

## II.        **Procedural History**

McKinnon was charged in a sixth superseding indictment with the following offenses: Count 1, distribution and possession with intent to distribute crack cocaine, cocaine hydrochloride and marijuana, in violation of 21 U.S.C. § 841(a)(1);  Count 2, conspiracy to distribute and possess with intent to distribute crack cocaine, cocaine hydrochloride, marijuana, and other controlled substances, in violation of 21 U.S.C. § 846; Count 3, conspiracy to launder proceeds of the distribution of controlled substances in violation of 18 U.S.C. § 1956(h); Count 4, possession and use of firearms during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c); Count 5, assault on federal officers, in violation of 18 U.S.C. § 111; Count 6, criminal forfeiture of $17,500 in currency constituting drug proceeds as provided for by 21 U.S.C. § 853.  (Sixth Superseding Indictment, Doc. 337.)  The sixth superseding indictment also included special findings of the grand jury regarding various facts giving rise to enhancements under the United States Sentencing Guidelines, due to the uncertainty then existing as to whether *Blakely v. Washington*, 542 U.S. 296 (2004), would render the guidelines unconstitutional.

McKinnon went to trial and was found guilty on Counts 1 through 4, not guilty on Count 5 and a verdict of forfeiture on Count 6.  In response to interrogatories in the verdict form, the jury also found beyond a reasonable doubt that McKinnon distributed or possessed with intent to distribute 1.5 kilograms or

more of crack cocaine, 500 grams or more of cocaine hydrochloride, and 100 kilograms or more of marijuana; had conspired to distribute 1.5 kilograms or more of crack cocaine, 500 grams or more of cocaine hydrochloride, and 100 kilograms or more of marijuana; that he laundered more than $200,000 in drug proceeds; that he had possessed a deadly weapon; that he had obstructed justice; and had created a substantial risk of death or serious bodily injury in the course of fleeing from law enforcement officers.  (Doc. 451.)  Defendant filed post-trial motions.  The Court granted a judgment of acquittal as to Count 2 but otherwise denied the motion in all other respects.

McKinnon was sentenced to an aggregate term of 40 years imprisonment, five years of supervised release, a $1,000 fine, $1,000 in community restitution, and a $300 special assessment.  (Doc. 563.)  The 40-year prison term was a downward variance from the guideline range of life imprisonment.

McKinnon appealed to the United States Court of Appeals for the Third Circuit which affirmed the judgment of conviction and sentence.  (*See United States v. McKinnon*, 301 Fed. App. 117 (3d Cir, 2008).  *Certiorari* was denied.  (*See McKinnon v. United States*, 129 S. Ct. 2792 (2009).  While the appeal was pending, McKinnon filed various other motions which were denied or dismissed.  (*See* Govt.'s Brief in Opp.  to Deft.'s Motion to Vacate Judgment ("Govt.'s Brief") doc. 691, at pp. 3-4.)

III.        **Statement of Facts**

The Government adequately sets forth the facts in its brief (doc. 691 at pp. 5-6) and are adopted by this court.  They will not be repeated herein.

4

**IV.**        **Discussion**

   **A.  Competency of Counsel Standard**

   To prevail on a claim of ineffective assistance of counsel, a petitioner must establish that (1) the performance of trial counsel fell below an objective standard of reasonableness, and (2) the performance of counsel unfairly prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88, 691 (1984).  "Both *Strickland* prongs must be satisfied." *George v. Sively*, 254 F.3d 438, 443 (3d Cir. 2001) (citing *United States v. Nino*, 878 F.2d 101, 104 (3d Cir. 1989).

   The first *Strickland* prong requires a defendant to "establish . . . that counsel's performance was deficient." *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001.)  Proving a deficiency in conduct "requires showing that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment." *Id.* (quoting *Strickland*, 466 U.S. at 687) (internal quotations omitted).  "In assessing counsel's performance, 'every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' " *Id.*  "That is to say, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quoting *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996) (quoting *Strickland*, 466 U.S. at 689)).  It is well settled that the benchmark for judging any claim of ineffectiveness of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The second prong of *Strickland* requires a defendant to show that counsel's performance unfairly prejudiced the defendant, meaning that counsel's errors were so serious as to deprive the defendant of a trial whose result is reliable. *Id.* It is not enough to show that the error had some conceivable effect on the outcome of the proceeding, for virtually every act or omission would meet such a test. *Id.* Rather, the defendant must show there is a *reasonable probability* that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is sufficient to undermine confidence in the outcome of the trial. *Id.* Effectiveness of counsel applies to advice given by counsel during guilty plea discussions. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *United States v. Booth*, 432 F.3d 542, 547 (3d Cir. 2005).

**B. Trial Counsel's Failure to Interview Michelle Resback**

On September 24, 2003, DEA agents took up a surveillance of 308 Hummel Avenue in Lemoyne, Pennsylvania, where the agents had information that McKinnon could be located. McKinnon was seen to emerge from the residence and place a bag in a silver van which the agents knew to belong to McKinnon. McKinnon got into the van which the agents attempted to stop. McKinnon sped away. About one and one-half miles away, a construction worker named Steve Warren saw a van, matching the description of McKinnon's van and driven by a black male, travel through the construction zone at a high rate of speed, knocking over traffic cones and nearly striking construction workers and vehicles. That portion of the highway was being prepared for resurfacing and no other vehicles were traveling on that portion of the road. After the van left the construction zone, a black duffel bag was found containing seven pounds of marijuana. Shortly after this

incident, Jennifer Cassel, one of McKinnon's girlfriends, received a telephone call from McKinnon in which he advised that he had been fleeing the police and had dumped a large quantity of marijuana.

McKinnon claims that if counsel had interviewed Michelle Resback, she would have provided information that would have clarified that it could not have been McKinnon's vehicle that sped through the construction zone and from which an alleged black bag was thrown. She would have testified that she saw two vans racing through the construction zone and then saw a small vehicle throw something out a car window.

The DEA agents interviewed Resback and were aware of her version of the incident. This was part of the discovery provided pretrial. McKinnon argues that had this witness's testimony been presented at trial, a reasonable probability existed that a jury would not have found him involved in the incident at the construction site.

Assuming Resback would have testified as McKinnon proffers, it is doubtful that it would have much weight. Against her testimony would be the testimony of four DEA agents, a construction worker, a citizen who found the bag, McKinnon's girlfriend, and the declaration of McKinnon's sister who related a conversation she had with him suggesting his involvement in the incident.

In light of the above, and assuming McKinnon counsel did not interview Resback, McKinnon was not prejudiced by any failure to interview or present Resback as a witness.

### C.  Failure to Challenge the Marijuana Laboratory Results

In *Melindez-Diaz v. Massachusetts*, 129 S. Ct. 2427 (2009), the Court held that the content of laboratory reports disclosing the analysis of suspected drugs is testimonial evidence and, therefore, is subject to the Confrontation Clause. McKinnon claims that his counsel's failure to require the chemist to testify rather than accept the report was incompetent.

McKinnon does not deny the substance was marijuana and he did not request to have his own analysis made.  Counsel made a strategic decision to accept the report particularly in the light of testimony of two drug dealers – Scott Thomas and Rich Roberson – who testified that they dealt in large quantities of marijuana which they purchased from McKinnon.  McKinnon does not show how he was prejudiced by not having the laboratory technician testify.  *United States v. Williams*, 403 Fed. App. 707, 2010 WL 5027161 (3d Cir. Dec. 10, 2010).

### D.  Appellate Counsel's Failure to Object to Court's Limitation of Cross-Examination of Co-Conspirator as to His Understanding and Defendant's Understanding of the Legal Definition of Money Laundering

Trial counsel's cross-examination sought to exculpate McKinnon on the ground that he did not know the acts he and his coconspirators were committing constituted the crime of money laundering.  The prosecution objected on the grounds of relevancy.  The Government must prove a conspiracy by establishing a unity of purpose, an intent to achieve a common goal, and an agreement to work together toward that goal.  *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999).  Whether the conspirators knew that the acts they agreed to commit constituted the offense of money laundering is irrelevant.

The Government points out that McKinnon improperly casts this argument as a Confrontation Clause violations which is incorrect.  This issue is strictly one of relevancy.  (Govt.'s Brief, doc. 691, at p. 35.)  Appellate counsel was not ineffective for not raising this issue on appeal.

### E.  Appellate Counsel's Failure to Attack the Money Laundering Conspiracy Conviction

McKinney claims that appellate counsel failed to attack the money laundering conspiracy conviction based on the holdings in *United States v. Santos*, 553 U.S. 507 (2008) and *Cuellar v. United States*, 553 U.S. 550 (2008).  These cases involved money laundering but are factually different from the issue raised by McKinnon; thus, this claim is wholly without foundation.  The two Supreme Court cases cited by McKinnon were issued in June 2008 – long after the briefs in the instant case were filed.  When the decisions were rendered, counsel filed the appropriate document in accordance with the circuit court rules bringing to the circuit court's attention these new rulings.  The Third Circuit, after considering the briefs and Rule 28(j) letters, declined to reverse the money laundering conspiracy conviction on the grounds articulated in *Santos*.  There was no incompetency of counsel on this issue.

### F.  Trial Counsel's Failure to Seek Sequestration of Witnesses and Appellate Counsel's Failure to Raise the Issue on Appeal

McKinney alleges that a prisoner named James Blackwell, while being held in the United States Marshal's lock up in the federal courthouse, overheard witnesses Marcel Brown, Raymond Jones, Kenneth Hunter, Baron McKinney, and Richard Roberson collude in their testimony.  In essence, their testimony would be to the effect that they would testify to buying large quantities of crack cocaine to make

it appear that McKinnon was a drug king-pin.  In particular, Blackwell claims that Baron McKinney would testify that McKinnon would supply him with nine ounces of cocaine whenever he needed it.  Kenneth Hunter would testify that McKinnon sold him a half to a kilo of cocaine every week or two.  (Pet.'s Brief in Support, Appendix, Affid,.of Blackwell (doc. 666).)

On day five of a six-day trial, the following occurred:

MR. PINSKEY: Yes, Mr. McKinnon has advised me that, over the weekend, there was another inmate by the name of Blackwell, who supposedly was here on Friday on another matter, or at least that's what he understands his name is.  He doesn't know what his first name is.

Apparently, Blackwell told him that, while he was in his holding cell upstairs on the 10th floor, the individuals who came in to testify on Friday, they were all talking about their testimony and what they're going to testify to and coordinating their testimony.

Now, if that is true, it would seem to be that, you know, that should be heard by the jury.  Now I have not had a chance to investigate that.

THE COURT:  Isn't that hearsay anyway?

MR. PINSKEY: What's that?

THE COURT:  Wouldn't that be hearsay anyway?

MR. PINSKEY: No, but it would be – he's – it's what – it wouldn't be hearsay in the sense that you have a witness, and he would be testifying to that, that witness coordinated his testimony with other witnesses.

MS. FAWCETT: It's still an out-of-court statement offered for the proof of the matter asserted, so that would make it hearsay.  And I don't see any exception that it falls under.

THE COURT:  I'll think about it.

MR. PINSKEY: It's sort of like the witness saying today, it's blue, and telling somebody else yesterday, it's red, you know.  You know, it's a statement by that witness.

THE COURT: It's classic hearsay.  And if you can come up with something to convince me otherwise –

MR. PINSKEY: In all the time that – all the free time I have, let me see if I can find some.

(Trial Transcript ("TR.") at p. 1010-11.)  Nothing further was presented to the court on this matter.  The issue was raised again in Defendant's post-trial motions and was addressed in this court's memorandum dated July 26, 2005 (doc. 555).  In that memorandum, the court noted that there is nothing on the record to establish that a sequestration order was in place.

Thus, assuming for purposes of argument that a sequestration order was not requested by counsel, the court will address whether McKinnon was prejudiced by such failure.[1]  An examination of the trial testimony reveals the following:

Roberson testified that he began buying marijuana from McKinnon beginning in 2002 up until the end of July 2002.  He purchased about 140 to 150 pounds of marijuana during this time period.  (TR. at p. 944.)  Nothing was mentioned in Blackwell's affidavit about the witnesses colluding on testimony about purchases of marijuana.  Roberson testified that on one occasion, he bought 18 ounces (½ kilogram) of cocaine from McKinnon.  Eventually, in a second interview with a DEA agent, Roberson admitted this and corrected a lie previously told to the agent.  (TR. at p. 955.)  Thus, the testimony at trial was consistent with his second interview given to the DEA agent.

Marcel Brown was not called as a witness.  (TR. at p. 966.)

Kenneth Hunter began his association with McKinnon in January 2003. He testified that from January to March, he averaged about ten pounds of marijuana

---

[1]If a sequestration order had been entered, enforcement of such an order would have been difficult to enforce.  All of the incarcerated witnesses had to be secured.  The United States Marshals Service has only three holding cells.  The only solution would have required the United States Marshals Service to bring in one witness each day – creating serious obstacles in keeping the trial progressing, let alone the cost involved.  There were other incarcerated witnesses present for other trials.  No witness was present in the courtroom while any other witness testified.

per week.  (TR. at p. 903.)  From March to June, the amount dropped to seven or eight pounds per week.  On or about June, 2003, Hunter switched to crack cocaine. The first transaction was about four ounces.  (TR. at pp. 907-08.)  After the first transaction of crack cocaine, Hunter purchased six to eight ounces until mid-July and then 18 ounces per week until mid-August.  (TR. at p. 909.)  Hunter also testified that, at one point, he saw McKinnon at a Days Inn motel room with about 100 pounds of marijuana.  This testimony is only in part consistent with Blackwell's affidavit, that he bought a half a kilo (for a limited period of time).

Raymond Jones' business was dealing drugs.  He had a separate business from McKinnon.  (TR. at p. 849.)  Jones testified that his only dealing with McKinnon was when McKinnon gave him a "bud" – a half ounce to an ounce, for which he did not pay.  Most of Jones' testimony involved his transactions with Cars for Credit – a business associated with McKinnon.

Baron McKinney testified as to the amounts of drugs he received from McKinnon.  At the conclusion of his testimony, the prosecutor, with McKinney's agreement, stipulated that McKinney's purchases amounted to nine ounces every other week for twelve months.  (TR. at p. 873.)

It is inconceivable from the testimony set forth above that there existed a conspiracy among the witnesses to testify.  There is no evidence that these witnesses knew each other before the date of their testimony except that Raymond Jones was Baron McKinney's drug supplier.  Jones' testimony was not damaging to McKinnon as to drug dealing.  Because of the disparity in the actual testimony of most of the witnesses from Blackwell's affidavit, it is questionable that collusion

existed between the witnesses and, furthermore, McKinnon has not sown prejudice. Counsel is not ineffective for not requesting sequestration.

### G.  Consecutive Mandatory Sentence for 18 U.S.C. § 924(c) Violation

McKinnon argues that a consecutive sentence mandated under 28 U.S.C. § 924(c) does not apply to defendants who are subject to mandatory minimum sentences.  He cites *United States v. Whitely*, 529 F.3d 150 (2nd Cir. 2008).  As the Government notes, in *Abbott v. United States*, 131 S. Ct. 18 (2010), the Supreme Court upheld the Third Circuit's decision in  in *Abbott v. United States*, 574 F.3d 2036 (3d Cir. 2009).  The Court held that 924(c) does require the imposition of a consecutive mandatory imposition of a consecutive mandatory sentence, even where a defendant is subject to a higher mandatory minimum under the statute charged in a separate count.  Thus, *Whitely* was overruled.  No incompetency of counsel can be sustained on this argument.

### H.  Sufficiency of Evidence to Prove Substance Possessed By Defendant was Cocaine Base

The jury found against McKinnon on the issue that he possessed cocaine base.  The jury heard testimony of drug dealers – Barron McKinney, Kenneth Hunter, Rodney Ramsey, Richard Roberson, and Jeff Stewart concerning their dealings with McKinnon and the type of drugs involved in their dealings.  The jury accepted their testimony.  The evidence supported their verdict.  Counsel was not ineffective for not challenging the jury's finding in light of the evidence and the deference to a jury's verdict.

### I.  Application of the Obstruction of Justice Enhancement to the Guideline Offense Level

The court adopts the reasoning and argument of the Government on this issue.  (Govt.'s Brief (doc. 691) at pp. 49-50.)

### J.  Count 4 Failed to Charge an Offense Against the United States

The court adopts the reasoning and argument of the Government on this issue.  (Govt.'s Brief (doc. 691) at pp. 51-53.)

### K.  Appellate Counsel's Failure to Appeal Alleged Court Error in Not Dismissing Juror Gargiulo Based on Acquaintance with Scott Thomas

During voir dire, the court read a list of potential witnesses and asked the jurors to raise their hands if any of the names were persons they knew or had some acquaintance.  No one responded to the name of Scott Thomas.  On the third day of trial, when Thomas appeared in the courtroom, Gargiulo advised the prosecutor that he recognized Thomas as a business representative of a company that had some dealings with the company for whom Gargiulo worked.  Gargiulo claimed his dealings with Thomas were not frequent and he had no social dealings with Thomas.  Upon questioning by the court, Gargiulo said he would not give Thomas's testimony any greater weight than any other witness and that nothing about his relationship would affect his ability to render a fair and impartial verdict in the case.

There was nothing that would give this court a basis for dismissing this juror for cause.  Appellate counsel was not ineffective for failing to raise this issue on appeal.

### L.  Trial Counsel's Failure to Contest the Drug Quantities Set Forth in the Presentence Report

The court adopts the reasoning and argument of the Government on this issue.  (Govt.'s Brief (doc. 691) at pp. 55-57.)

15

### M.  Enhancement of Offense Level for Reckless Endangerment

When law enforcement officers attempted to arrest McKinnon on September 25, 2003, he drove off at a high rate of speed, nearly striking two agents. There was no mistake in the agent's identification of McKinnon as a surveillance was set up around 308 Hummel Avenue in Lemoyne, Pennsylvania.  McKinnon was observed leaving the house and was seen to enter a silver van.  That same van, after avoiding an attempted "bumper lock," drove off at a high rate of speed.  That same vehicle was observed going through a red light, traveling in a wrong lane of traffic, and knocked over traffic cones in a construction zone, nearly striking other vehicles and workers.  McKinnon reportedly told a cell mate, Otis Grayson, that he wished he had hit the agents when he was escaping on September 25, 2003.Furthermore, the jury made a finding that McKinnon recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from law enforcement officers.  This finding was supported by the evidence set forth above.

McKinnon argues that this finding was inappropriate because the Government failed to present evidence that McKinnon knew he was being pursued by law enforcement personnel.  Whether the law requires that a defendant know he is being pursued by law enforcement officers or only if the law requires that the pursuit be done by law enforcement officers is unsettled.  In any event, the facts are that McKinnon was pursued by law enforcement officers.  His knowledge of that fact can be gleaned from the fact that he told his cellmate, Otis Grayson, that he knew agents were pursuing him and by his telephone call to his girlfriend where he told her he was being chased by police.  The facts support the enhancement and trial  counsel was not incompetent for not raising this issue.

### N.  Cumulative Impact of Trial and Appellate Counsel

This court found no single instance of incompetency; there is nothing to accumulate.

## V.        **Conclusion**

The court finds that McKinnon's claims do not have merit.  An appropriate order will be issued.

                                          s/Sylvia H. Rambo
                                          United States District Judge

Dated:  May 26, 2011.

17

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


**UNITED STATES OF AMERICA**          :          **CRIMINAL NO. 1:CR-03-251-05**

                                                   :

**v.**                                             :

                                                   :

**MICHAEL MCKINNON**                   :


## O R D E R

In accordance with the accompanying memorandum, **IT IS HEREBY**

**ORDERED THAT:**

1) The petition for writ of habeas corpus filed pursuant to 28 U.S.C.

§ 2255 is **DENIED**.

2) The Clerk of Court shall close the file.

3) This court declines to issue a certificate of appealability.



                                   s/Sylvia H. Rambo
                                   United States District Judge

Dated:  May 26, 2011.