IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Crim. No. 1:03-CR-251** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **MICHAEL MCKINNON** | : | **Judge Sylvia H. Rambo** |

## M E M O R A N D U M

Before the court is the motion for compassionate release filed by Defendant Michael McKinnon ("Defendant" or "Mr. McKinnon"). (Doc. 793.) For the reasons outlined below, the court will grant the motion.

## I.   BACKGROUND

On July 21, 2004, a grand jury indicted Mr. McKinnon on six counts: (1) distribution and possession with intent to distribute multiple drugs; (2) conspiracy to distribute and possess with intent to distribute multiple drugs; (3) conspiracy to commit money laundering; (4) possession of firearms in furtherance of drug trafficking; (5) assault on federal officers; and (6) forfeiture of assets acquired through the commission of crimes. (*See* Doc. 337.) This final pre-trial indictment also included various special findings. (*Id.*)

On September 27, 2004, a jury found Mr. McKinnon guilty on all counts except for count 5. It also made multiple special findings, finding he sold or intended to sell at least 1.5 kilograms of crack cocaine, 500 grams of cocaine hydrochloride,

1

and 100 kilograms of marijuana; laundered $200,000; possessed a deadly weapon; obstructed justice; and recklessly endangered law enforcement while fleeing. Finally, it found that $17,500 seized by the government was properly forfeitable. On July 26, 2005, the court granted Mr. McKinnon's motion for judgment of acquittal on Count 2 based on insufficient evidence to justify his conviction of conspiracy.

On December 5, 2005, the court held a sentencing hearing for Mr. McKinnon. Mr. McKinnon raised several arguments and objections, none of which directly impacted the sentencing guidelines. As a result of his conviction, he faced a 10-year statutory minimum for his drug offenses and a 7-year statutory minimum for his weapon offense, both of which had to be served consecutively. The special findings of the jury resulted in a sentencing guideline recommendation of life in prison. The court varied downward and sentenced Mr. McKinnon to 480 months in prison. On February 18, 2014, the court partially granted a motion for reduction in sentence filed by Mr. McKinnon, lowering his total sentence to 444 months in prison.

On April 23, 2020, Mr. McKinnon filed a motion requesting the court appoint him counsel to help him move for compassionate release. (Doc. 793.) That same day, the court ordered the Federal Public Defender's Office of the Middle District of Pennsylvania to either represent Mr. McKinnon or assign him a Criminal Justice Act attorney. (Doc. 794.) The FPD proceeded to file a brief in support of his motion on July 2, 2020, as well as a motion to seal the briefing to protect the confidentiality

of Mr. McKinnon's medical records.  (Docs. 796-797.)  The government submitted

an opposition (Doc. 798) and Mr. McKinnon replied (Doc. 799).  The matter is thus

ripe for review.

## II.    **STANDARD OF REVIEW**

Under 18 U.S.C. § 3582(c)(1)(A), a defendant may move the sentencing court

to reduce his or her term of imprisonment.  To do so, the defendant must first request

that the Bureau of Prisons file such a motion on his or her behalf, and may only move

after he or she has "fully exhausted all administrative rights to appeal a failure of the

Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days

from the receipt of such a request by the warden of the defendant's facility,

whichever is earlier[.]"  18 U.S.C. § 3582(c)(1)(A).

If the defendant complies with this exhaustion requirement, the court may

reduce his or her term of imprisonment, after considering the factors set forth in 18

U.S.C. § 3553(a), if the court finds that extraordinary and compelling reasons

warrant such a reduction, and that the reduction is consistent with the applicable

policy statements by the Sentencing Commission.  18 U.S.C. § 3582(c)(1)(A)(i).

Under the Sentencing Commission's relevant policy statement, the court must also

find that the defendant is not a danger to the safety of any person or the community

as provided in 18 U.S.C. § 3142(g).  USSG § 1B1.13.2 Medical conditions that

qualify as "extraordinary and compelling reasons" include:

      (1) suffering from a serious physical or medical condition,

      (2) suffering from a serious functional or cognitive impairment, or

      (3) experiencing deteriorating physical or mental health because of the aging process

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, cmt. n.1(A)(ii).

Under 18 U.S.C. § 3553(a), the court considers multiple factors, including, among other things, (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed…to protect the public from further crimes of the defendant"; (3) "the need for the sentence imposed…to afford adequate deterrence to criminal conduct"; and (4) "the need for the sentenced imposed…to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." The burden rests with the defendant to show that a reduction in sentence is proper. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

## III.   <u>DISCUSSION</u>

Mr. McKinnon's case presents truly extraordinary and compelling circumstances. Mr. McKinnon suffers from a host of debilitating illnesses, including obesity, hypertension, hyperlipidemia, coronary artery disease, and, most importantly, kidney disease with an end-of-life trajectory. He thus has no reasonable

chance of recovering from organ failure and suffers from a collection of diseases that give him a substantial chance of death if he were to contract COVID-19. *See United States v. Harris*, No. 06-CR-30058, 2020 WL 3483559, at *3 (C.D. Ill. June 26, 2020) ("[H]aving chronic kidney disease of any stage increase the risk of severe illness from COVID."); *United States v. Somerville*, --- F. Supp. 3d ----, 2020 WL 2781585, at *8 (W.D. Pa. May 29, 2020) ("[H]ypertension and obesity have proven to be the most common comorbidities associated with increased risk of infection, grave illness, and death due to COVID-19.") (internal quotations omitted) (collecting cases). Further, by suffering from a condition "with an end of life trajectory" including "end-stage organ failure," Mr. McKinnon falls squarely within the first extraordinary and compelling circumstance identified by the Sentencing Guidelines. USSG § 1B1.13, Comment 1(A)(i) (explaining that an extraordinary and compelling circumstance exists when the "defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory) . . . [such as] end-stage organ failure").

Mr. McKinnon is also currently residing within a prison that has already had over sixty prisoners contract, and two die from, COVID-19. This demonstrates that Mr. McKinnon is at a substantial risk of contracting the virus. While "courts have most often denied motions for compassionate release where prisoners articulate only generalized or speculative fear," Mr. McKinnon's showing is substantially more

concrete. *Somerville*, 2020 WL 2781585, at *7-8 (collecting cases and granting motion for compassionate release where fear was more than speculative).

The government agrees that Mr. McKinnon's circumstances are extraordinary and compelling. The government thus opposes Mr. McKinnon's release solely on the ground that Mr. McKinnon's crimes are particularly offensive and justify the full enforcement of his sentence under the § 3553(a) factors. The government, however, does not address a few arguments raised by Mr. McKinnon that add nuance to this issue and suggest his immediate release would be consistent with § 3553(a).

First, while many prisoners claim they have changed in prison, few of them can offer up the disciplinary cleanliness, history of hard work, and praise from prison staff that Mr. McKinnon has presented to the court. John Davis, a registered nurse at Mr. McKinnon's facility, wrote that Mr. McKinnon "has been a true asset to the Nursing dept. in his job performance." Other staff have similarly described Mr. McKinnon as respectful, pleasant, a dedicated worker, and a helpful man with mentally ill prisoners. The records submitted by Mr. McKinnon also demonstrate he has engaged in a multitude of training and educational programs in prison. While people sometimes spend much time in prison without changing, staring at death can bring deep reflection and change upon many, and Mr. McKinnon has been battling kidney failure for years. Given his challenges, efforts, and the wide praise he has received from objective third-party prison staff, the court is compelled to find that

Mr. McKinnon has made substantial improvements in his character and conduct during his time in prison.

Second, it is important that Mr. McKinnon was found not guilty of the sole violent crime the government accused him of.  While drugs can hurt many people, many of the prisoners seeking compassionate release before this court have intentionally hurt people for their own benefit—Mr. McKinnon is not one of them. *United States v. Rodriguez*, --- F.3d ----, 2020 WL 1627331, at *11-12 (E.D. Pa. Apr. 1, 2020) (holding man who was convicted of drug trafficking and possession of a firearm in furtherance of drug trafficking was a nonviolent offender, rendering his release consistent with the § 3553(a) factors).

Third, allowing Mr. McKinnon to leave prison after serving seventeen years will maintain respect for the law.  "Seventeen years is a long time—long enough to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes."   *Id.* at *12 (granting motion for compassionate release filed by a man who committed similar offenses to Mr. McKinnon and who served a substantially similar amount of time).[1]  This is further demonstrated by the fact that seventeen years satisfies the statutory minimum of Mr.

---

[1]     While Mr. Rodriguez trafficked a smaller amount of drugs than Mr. McKinnon, Mr. McKinnon has far greater health problems and more positive reinforcement from prison officials than Mr. Rodriguez, rounding out the inconsistencies in these cases.

McKinnon's sentence.  Under the statutes governing Mr. McKinnon's sentence, he was facing a mandatory minimum of ten years for his drug conviction and seven years for his firearms conviction—a total of seventeen years that he had to, and did, serve consecutively.  Further, Mr. McKinnon turned down a plea deal from the government that would have statutorily capped his sentence at twenty years—a sentence that would have allowed him to be sent home after roughly seventeen-and-a-half years given his good behavior.  While Mr. McKinnon made a grave mistake turning down this generous offer from the government, the fact that the government would have found such a sentence acceptable for him does support the idea that him serving seventeen years satisfies the § 3553(a) factors.

Finally, the United States points out that the court has issued previous opinions denying a reduction in sentence for Mr. McKinnon.  This is true, but neither of those opinions discussed the gravamen of the issues before the court today.  In one decision, the court found Mr. McKinnon's prison was handling his health conditions, but that predated complications arising from a 2016 kidney transplant, plus the introduction of COVID-19 has radically changed his potential risk of death in prison.  It is also true that the court denied a motion for reduction in sentence Mr. McKinnon filed within the last year, but the court's discussion there centered on whether legislative changes to the appropriate sentence for particular volumes of drugs affected Mr. McKinnon's sentence.  Because the jury found Mr. McKinnon

responsible for a substantial volume of the drugs, the court found those legislative changes did not affect his sentence.  Thus, the court's ruling today is consistent with its prior rulings as well.

In short, a motion for compassionate release is an exceptional remedy the court does not grant lightly.  It must be reserved for rare circumstances so as to reinforce the general finality of a sentence instead of opening the door to a flurry of prisoners seeking release.  Keeping all this in mind, the court finds Mr. McKinnon's situation exceptional.  He is in a prison that has already had multiple people die of COVID-19, has a virtual guarantee of death if he were to contract the virus, and he has shown a substantial improvement in his character.  His release will thus allow the court to both exert compassion for a sick individual and maintain the overall integrity of the legal system. As such, Mr. McKinnon's motion will be granted.

## IV.   <u>CONCLUSION</u>

For the reasons outlined above, Mr. McKinnon's imprisonment sentence will be granted.  The details of his method of release will be specified in an appropriate order that will follow this memorandum.

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: August 6, 2020